No. 23-1074

---

# In the United States Court of Appeals for the Tenth Circuit

---

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

v.

DAVID A. LESH,

*Defendant-Appellant.*

---

On Appeal from the U.S. District Court
for the District of Colorado
No. 1:22-cr-00033-DDD-GPG; Judge Daniel D. Domenico
No. 1:20-po-07016-GPG; Magistrate Judge Gordon P. Gallagher

---

### APPELLANT'S OPENING BRIEF

---

### ORAL ARGUMENT REQUESTED

---

Kara M. Rollins
  *Counsel of Record*
Richard A. Samp
NEW CIVIL LIBERTIES ALLIANCE
1225 19th Street NW, Suite 450
Washington, DC 20036
(202) 869-5210
kara.rollins@ncla.legal

June 8, 2023                    *Counsel for Defendant-Appellant*

# TABLE OF CONTENTS

TABLE OF CONTENTS................................................................................ i

TABLE OF AUTHORITIES ...................................................................... iii

STATEMENT OF RELATED CASES ................................................... vii

GLOSSARY OF TERMS ....................................................................... viii

INTRODUCTION ...................................................................................... 1

STATEMENT OF JURISDICTION ........................................................... 2

STATEMENT OF THE ISSUES ................................................................ 2

STATEMENT OF FACTS AND PROCEDURAL HISTORY ................... 3

   I.  PRETRIAL PROCEEDINGS ........................................................... 4
   II.  THE NON-JURY TRIAL ............................................................... 6
   III. THE APPEAL FROM THE MAGISTRATE JUDGE'S JUDGMENT OF CONVICTION ... 11

SUMMARY OF ARGUMENT ................................................................. 14

ARGUMENT ........................................................................................... 16

   I.  STANDARD OF REVIEW ............................................................ 16
   II.  PROSECUTORS FAILED TO PROVE AN ESSENTIAL ELEMENT OF LESH'S ALLEGED VIOLATION OF 36 C.F.R. § 261.14: THAT THE FOREST SERVICE POSTED A MAP SHOWING WHERE SNOWMOBILING IS AND IS NOT PERMITTED WITHIN THE WHITE RIVER NATIONAL FOREST ................................................ 17

      A. Prosecutors Did Not Meet Their Evidentiary Burden by Introducing Evidence that "Closed" Signs Were Posted at Keystone Resort ............. 18
      B. The Over-Snow Vehicle Use Map of Which the Magistrate Judge Took Judicial Notice Did Not Satisfy the Evidentiary Burden ........................ 19
      C. The History of Forest Service Snowmobiling Regulation Supports Appellant's Position ................................................................. 22

   III. PROSECUTORS FAILED TO PROVE A VIOLATION OF 36 C.F.R. § 261.10(c) BECAUSE THEY DID NOT PROVE THAT LESH PERFORMED "WORK ACTIVITY OR SERVICE" IN THE WHITE RIVER NATIONAL FOREST ................................... 25

      A. Punishing Lesh for His Instagram Post Violates His First Amendment Free-Speech Rights ..................................................................... 34
      B. 36 C.F.R. § 261.10(c) Is Void for Vagueness as Applied to Lesh .......... 38

IV.    7 U.S.C. § 1011(f) Lacks an "Intelligible Principle" and Instead Grants the Secretary Unfettered Legislative Authority in Violation of the Nondelegation Doctrine ............................................... 43

V. Lesh Was Deprived of His Constitutional Right to a Trial by Jury  48

CONCLUSION ........................................................................................ 54

POSITION REGARDING ORAL ARGUMENT ................................... 54

CERTIFICATE OF COMPLIANCE ...................................................... 56

CERTIFICATE OF SERVICE ............................................................... 57

ADDENDA ............................................................................................. 58

Order Affirming Convictions, ECF #140, Mar. 10, 2023

Memorandum of Decision and Order, ECF #90, Oct. 22, 2021

Trial Transcript Excerpt, Denial of Motion for Judgment of Acquittal, ECF #89, Aug. 5, 2021

# TABLE OF AUTHORITIES

## Cases

*A.L.A. Schechter Poultry Corp. v. United States*,
  295 U.S. 495 (1935) ..................................................................................44

*Am. Inst. for Int'l Steel, Inc. v. U.S.*,
  376 F. Supp. 3d 1335 (Ct. Int'l Trade 2019).......................................54

*Animal Legal Defense Fund v. Kelly*,
  9 F.4th 1219 (10th Cir. 2021)........................................................... 37, 38

*Aposhian v. Wilkinson*,
  989 F.3d 890 (10th Cir. 2021) ...............................................................48

*Callan v. Wilson*,
  127 U.S. 540 (1888) .................................................................................50

*Duncan v. Louisiana*,
  391 U.S. 145 (1968) ...................................................................... 14, 50, 54

*Field v. Clark*,
  143 U.S. 649 (1892) .................................................................................45

*Gundy v. United States*,
  139 S. Ct. 2116 (2019)...................................................................... 44, 45

*INS v. Chadha*,
  462 U.S. 919 (1983) .................................................................................47

*J.W. Hampton, Jr., & Co. v. United States*,
  276 U.S. 394 (1928) .................................................................................44

*Jarkesy v. Sec. & Exch. Comm'n*,
  34 F.4th 446 (5th Cir. 2022)............................................................ 45, 48

*Johnson v. United States*,
  576 U.S. 591 (2015) .................................................................................39

*Lewis v. United States*,
  518 U.S. 322 (1996) .................................................................................53

*Marshall Field & Co. v. Clark*,
  143 U.S. 649 (1892) .................................................................................44

*Mistretta v. United States*,
  488 U.S. 361 (1989) .......................................................................... 43, 45

*Nat'l Inst. of Family & Life Advocates v. Becerra*,
  138 S. Ct. 2361 (2018)............................................................................38

*Paul v. United States*,
  140 S. Ct. 342 (2019)...............................................................................45

*Sessions v. Dimaya*,
 138 S. Ct. 1204 (2018)..........................................................................39
*Skilling v. United States*,
 561 U.S. 358 (2010) ..........................................................................32
*United States v. Brown*,
 200 F.3d 710 (10th Cir. 1999) ..........................................................16
*United States v. Burch*,
 169 F.2d 666 (10th Cir. 1999) .................................................... 20, 21
*United States v. Caronia*,
 703 F.3d 149 (2d Cir. 2012) ....................................................... 36, 37
*United States v. Haymond*,
 139 S. Ct. 2369 (2019)............................................................... 49, 53
*United States v. Henson*,
 9 F.4th 1258 (10th Cir. 2021) ...........................................................35
*United States v. Lewton*,
 575 Fed. Appx. 751 (9th Cir. 2014) ...................................................31
*United States v. Patzer*,
 15 F.3d 934 (10th Cir. 1993) ................................................. 30, 31, 39
*United States v. Pheasant*,
 No. 321CR00024RCJCLB, 2023 WL 3095959
 (D. Nev. Apr. 26, 2023)............................................ 44, 45, 46, 47, 48
*United States v. Unser*,
 165 F.3d 755 (10th Cir. 1999) ..........................................................23
*Wayman v. Southard*,
 23 U.S. (10 Wheat.) 1 (1825) ............................................................44
*Winter Wildlands Alliance v. U.S. Forest Service*,
 2013 WL 1319598 (D. Id. 2013) ................................................. 23, 24

**Constitutional Provisions**

U.S. Const. amend. VI ................................................................................48
U.S. Const. art. I, § 1.......................................................................... 15, 43
U.S. Const. art. II, § 1 ................................................................................43
U.S. Const. art. III, § 1 ...............................................................................43
U.S. Const. art. III, § 2 ...............................................................................48

iv

## Statutes

18 U.S.C. § 3231 ..................................................................................2
28 U.S.C. § 1291 ..................................................................................2
7 U.S.C. § 1011(f).............................................................. 2, 15, 46, 47

## Rules and Regulations

36 C.F.R. § 212.81 ..............................................................................20
36 C.F.R. § 216.14 ..............................................................................22
36 C.F.R. § 251.50(c) ..........................................................................30
36 C.F.R. § 251.51 ..............................................................................30
36 C.F.R. § 261.1(a) ............................................................................26
36 C.F.R. § 261.10(c)................................... 1, 2, 5, 14, 15, 16, 26, 28, 30, 39, 47
36 C.F.R. § 261.10(k) ..........................................................................30
36 C.F.R. § 261.14 ............................................. 1, 2, 4, 5, 14, 17, 20, 47
36 C.F.R. § 261.2 ......................................................................... 27, 29
36 C.F.R. § 295.2 (repealed 2005)..........................................................23
Fed. R. Evid. 201(b)............................................................................21
Forest Service, *Travel Management, Designated Routes and Areas for Motor Vehicle Use*, 70 Fed. Reg. 68264 (Nov. 9, 2005).................................24
Forest Service, *Use by Over-Snow Vehicles (Travel Management Rule)*, 80 Fed. Reg. 4500 (Jan. 28, 2015)........................................ 22, 23, 25
*Rules of Procedure for the Trial of Minor Offenses Before United States' Magistrates*, 51 F.R.D. 197, 209 (1971) ............................................52

## Other Authorities

Andrea Roth, *The Lost Right to Jury Trial in "All" Criminal Prosecutions*, 72 DUKE L.J. 599 (2022) ................................................ 49, 50, 51, 53
Forest Service, *By the Numbers* (last visited June 5, 2023), https://www.fs.usda.gov/about-agency/newsroom/by-the-numbers....................22
Forest Service, Dillon Ranger District (last visited June 8, 2023), https://www.fs.usda.gov/recarea/whiteriver/recarea/?recid=4041.......................17
John Berlau, *A Declaration of Independence from the Administrative State?*, Law & Liberty Blog (July 4, 2022), https://lawliberty.org/a-declaration-of-independence-from-the-administrative-state/......................................51
Philip Hamburger, Is ADMINISTRATIVE LAW UNLAWFUL? (2014) .................. 50, 52
Rachel Monroe, #Vanlife, the Bohemian Social-Media Movement, THE NEW YORKER (Apr. 17, 2017).........................................................41

THE DECLARATION OF INDEPENDENCE (U.S. 1776) ..................................................51

THE FEDERALIST NO. 83 (Alexander Hamilton) (J.E. Cooke ed., 1961) .... 49, 51, 52

## STATEMENT OF RELATED CASES

No prior appeals have been taken in this action, or to this Court from any related action.

_s/ Kara M. Rollins_

Kara M. Rollins
    *Counsel of Record*

Dated: June 8, 2023

## GLOSSARY OF TERMS

| | |
|---|---|
| BLM | Bureau of Land Management |
| Forest Service | U.S. Forest Service |
| NFS | National Forest System |
| OSV | Over-snow vehicles |
| Snowmobile Rule | 80 Fed. Reg. 4500 (January 28, 2015) |
| Travel Management Rule | 70 Fed. Reg. 68264 (Nov. 9, 2005) |
| USDA | U.S. Department of Agriculture |
| USFS | U.S. Forest Service |

## INTRODUCTION

Following a non-jury trial, a magistrate judge found Defendant-Appellant David Lesh—a former pro skier, entrepreneur, social media influencer, and provocateur (of sorts)—guilty of violating two regulations adopted by the U.S. Forest Service.  The judge determined that Lesh operated a snowmobile in an area not designated for use by "over-snow vehicles," in violation of 36 C.F.R. § 261.14; and that he conducted unauthorized "work activity or service" on National Forest System (NFS) lands, in violation of 36 C.F.R. § 261.10(c).  App. Vol. I at 49.[1]  The district court affirmed the convictions.  App. Vol. I at 174-175.

Both convictions should be overturned, as the United States failed to prove that Lesh violated either regulation.  In addition, § 261.10(c) as applied in this case violates Lesh's First and Fifth Amendment rights, the statute authorizing promulgation of the regulations at issue lacks an "intelligible principle," and the courts below deprived Lesh of his Sixth Amendment right to a trial by jury.  America's vast public lands are worthy of protection, but that important endeavor should not be achieved through serious deprivations of constitutional rights.

---

[1] References to the appendix, including transcript excerpts, are by volume and page number (*e.g.*, App. Vol. I at 27).

## STATEMENT OF JURISDICTION

On March 10, 2023, the U.S. District Court for the District of Colorado (Hon. Daniel D. Domenico) affirmed the convictions of the Appellant, David A. Lesh. App. Vol. I at 188.  Mr. Lesh timely filed his notice of appeal on March 15, 2023. App. Vol. I at 189.  This Court has appellate jurisdiction under 28 U.S.C. § 1291. The district court exercised jurisdiction pursuant to 18 U.S.C. § 3231.

## STATEMENT OF THE ISSUES

1. Did the United States fail to prove an essential element of Lesh's violation of 36 C.F.R. § 261.14 when the government provided no evidence that the Forest Service posted a map showing where snowmobiling is and is not permitted within the White River National Forest?

2. Did the United States fail to prove a violation of 36 C.F.R. § 261.10(c) because the government did not prove that Lesh performed "work activity or service" in the White River National Forest?

3. Does 7 U.S.C. § 1011(f)'s broad delegation of authority to promulgate the regulations for which Lesh was convicted violate the nondelegation doctrine?

4. Was Lesh denied his Sixth Amendment constitutional right to a trial by jury?

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

Appellant David Lesh is an accomplished skier with a large Instagram following.  Based on his prominent association with professional skiing (including being paid to perform aerial tricks in photo and video shoots) and other outdoor-adventure activities, Lesh is a social media influencer. App. Vol. I at 199.[2]  He also owns a company, Virtika, that sells outdoor gear.

On April 25, 2020, Lesh posted two photographs to his Instagram account that depicted a snowmobiler at the Keystone Ski Resort in Colorado.  App. Vol. I at 190-192.  The photos showed the snowmobiler driving over a jump in the Keystone terrain park and were accompanied by a comment stating, "solid park sesh, no lift ticket needed."  App. Vol. I at 191.  On that date, the Keystone Ski Resort was closed due to the Covid-19 pandemic; the closure was noted on signs posted at the Resort.  App. Vol. II at 249.  Prosecutors have never contended that the identity of the snowmobiler could be determined based on the photos.

*The New Yorker* magazine published an article about Lesh in January 2021.  App. Vol. I at 198-213.  The article stated that Lesh "posted a couple of photos of

---

[2] A social media influencer, or social influencer, is someone who has a reputation of authority or expertise in a particular area and who uses that authority to engage with large numbers of social media followers.

him snowmobiling off a jump at a closed terrain park at the Keystone ski area App. Vol. I at 204.  In a later interview, Lesh stated that "nothing that [*The New Yorker* article] said was untrue or unfair, but it captures only one aspect of me, one part of my life."  App. Vol. I at 218, *available at* https://share.transistor.fm/s/6d17e991.

## I. PRETRIAL PROCEEDINGS

The Keystone Resort is located on land administered by the Forest Service; it lies within the White River National Forest.  App. Vol. I at 18.  On September 15, 2020, the United States charged Lesh with violating 36 C.F.R. § 261.14 by using an over-snow vehicle on NFS land other than land designated for such use.  *Id.*  The information also charged Lesh with five additional counts related to his alleged entry into Hanging Lake, a protected area, in June 2020.[3]  App. Vol. I at 18-20.  On February 11, 2021, the United States filed a two-count superseding information. App. Vol. I at 21-22.  Both counts focused on his alleged snowmobiling at Keystone in April 2020.  Count 1 repeated the charge that he operated a snowmobile off a designated route, in violation of 36 C.F.R. § 261.14.  App. Vol I at 21.  Count 2

---

[3] Lesh posted to his Instagram account in June 2020 a photo purporting to show him standing on a log in Hanging Lake.  Prosecutors eventually dropped the five Hanging Lake charges after they were forced to concede that they could not show that the photo was real.  Lesh repeatedly stated, including in *The New Yorker* article, App. Vol. I at 206, that the photo was not real—he had photo-shopped it.

alleged, "On or about April 24, 2020, through October 21, 2020, in the State and District of Colorado, upon lands administered by the United States Forest Service, namely the Keystone Ski Area within the White River National Forest and elsewhere, [Lesh] sold or offered for sale any merchandise or conducted any kind of work activity or service without authorization," in violation of 36 C.F.R. § 261.10(c).[4]  App. Vol. I at 21-22.

In April 2021, defense counsel filed two motions to dismiss, arguing among other things a "violation of the nondelegation doctrine."  App. Vol. I at 23-26, 27-32.  The court denied both motions.  App. Vol. I at 11-12 (text order), 33-38.  The

---

[4] Section 261.14, entitled "Over-snow vehicle use," states in pertinent part:

After National Forest System roads, National Forest System trails, and areas on National Forest System lands have been designated for over-snow vehicle use pursuant to 36 CFR 212.81 on an administrative unit or a Ranger District of the National Forest System, and these designations have been identified on an over-snow vehicle use map, it is prohibited to possess or operate an over-snow vehicle on National Forest System lands in that administrative unit or Ranger District other than in accordance with those designations.

Section 261.10(c) states:

The following are prohibited: ... (c) Selling or offering for sale any merchandise or conducting any kind of work activity or service unless authorized by Federal law, regulation, or special-use authorization.

5

court also denied defense counsel's request for a jury trial.  App. Vol. II at 226, 228;
App. Vol. I at 50.

## II.  THE NON-JURY TRIAL

Lesh's non-jury trial was conducted on August 5, 2021 before U.S. Magistrate
Judge Gordon P. Gallagher.  App. Vol. II at 235-483.  Prosecutors presented two
witnesses: Christopher Ingram, an employee of the Keystone Resort; and Benjamin
Leach, a Special Agent for the Forest Service.  App. Vol. II at 247, 289.

Ingram testified that on April 25, 2020, the same day that photos of the
snowmobiler were posted on Lesh's Instagram account, he visited Keystone Resort
and discovered freshly made snowmobile tracks at the terrain park.  App. Vol. II at
264-265, 268, 273.  He testified that the Resort was closed in April 2020 due to the
Covid-19 pandemic and that signs announcing the closure were posted at the Resort.
App. Vol. II at 249.  He further testified that the Resort is located on Forest Service
land.  App. Vol. II at 275.

Leach, who investigated Lesh on behalf of the Forest Service, testified
regarding Lesh's Instagram posts and news media coverage of his activities.  App.
Vol. II at 347-348.  Leach testified that Lesh's Instagram posts included: (1) several
photos of a snowmobiler going over a jump at Keystone resort, posted on April 25,
2020 (App. Vol. I at 191, 192; App. Vol. II at 349-350); (2) a photo purporting to

6

show Lesh standing on a log in Hanging Lake, posted in June 2020 (App Vol. I at 214; App. Vol. II at 347-349); and (3) a photo purporting to show Lesh defecating into Maroon Lake, posted on October 25, 2020 (App. Vol. I at 217; App. Vol. X 359-362).[5]  He testified that Lesh's news media coverage included a lengthy article about Lesh in the January 18, 2021 issue of *The New Yorker*, entitled *Trolling the Great Outdoors* (App. Vol. II at 317; App. Vol. I at 198-213); and a 57-minute YouTube interview of Lesh conducted by Vance Crowe on March 8, 2021 (App. Vol. II at 322-323, 366-368, *available at* https://share.transistor.fm/s/6d17e991).[6]

---

[5] Leach testified that the Forest Service could not determine whether Government Exhibits 10 and 11 (the photos at Hanging Lake and Maroon Lake) had been photo-shopped.  He testified that their inability to determine the authenticity of the Hanging Lake photo played a role in prosecutors' decision to drop all charges related to Lesh's alleged activities at Hanging Lake.  App. Vol. II at 422.  The magistrate judge nonetheless admitted the photos into evidence, reasoning that they constituted "evidence of motive, opportunity, intent[.]"App. Vol. I at 59.

[6] *The New Yorker* article includes the following statement by the writer: "Last April, … Lesh decided to poke the bear.  He posted a couple of photos of him snowmobiling off a jump in a closed terrain park at the Keystone ski resort."  App. Vol. I at 204.  The writer added, "[Lesh] played a short sequence [from a video] that purported to show that the Hanging Lake and Maroon Lake photos had been Photoshopped. … He went on, 'I want to be able to post fake things on the Internet. That's my fucking right as an American.'"  App. Vol. I at 206.  Later in the article, the writer included the following statement: "Lesh declined to reveal Virtika's annual sales, though he claimed they were up thirty percent since he'd posted the photo at Hanging Lake" in June, 2020.  App. Vol. I at 207.

On the YouTube video, Lesh makes the following statement regarding the

Leach testified that anyone who seeks to conduct commercial activity on NFS land must obtain a "special use permit" authorizing that commercial activity. App. Vol. X at 352-355. He stated that Lesh neither applied for nor received a special use permit. App. Vol. II at 353.

After the United States rested its case, the defense filed a motion for judgment of acquittal. App. Vol. II at 429-433. Counsel argued that prosecutors presented insufficient evidence to demonstrate Lesh's guilt on either count. App. Vol. II at 429-433. In particular, counsel stressed that prosecutors failed to submit evidence that the Forest Service had posted any maps indicating where snowmobiling was and was not permitted in the Keystone area. App. Vol. II at 429-431. Counsel also argued that prosecutors failed to present evidence sufficient to establish that Lesh was the snowmobiler depicted in his Instagram pictures. App. Vol. II at 431-432. With respect to Count 2, counsel argued that prosecutors presented "no evidence that any merchandise was sold, or offered for sale, or that any work activity was conducted" on NFS lands. App. Vol. II at 432.

The magistrate judge denied the motion for judgment of acquittal. App. Vol.

---

author of *The New Yorker* article, "Nothing he said was untrue or unfair. … But it only captures one aspect of me, of one part of my life. … It's relatively one-sided."

II at 435-436.  In particular, the judge stated with respect to Count 1:

> [T]he Court does not find that [proffering a map showing prohibition for over-snow vehicle use on NFS lands] is the sole method of meeting that prong of the [36 C.F.R. § 261.14] analysis.  Here there is unrebutted testimony that … the area in question was signed—I believe the testimony was that there was essentially signage every hundred or so feet, and that it was signed specifically that it was closed on this occasion, and closed to snowmobiling.

App. Vol. II at 436.

The defense then presented several witnesses for the purpose of establishing that Lesh's Instagram posts often depicted skiers and snowmobilers other than Lesh himself.  Two witnesses stated that they were the individuals anonymously depicted riding snowmobiles in pictures posted on Lesh's Instagram account.  App. Vol. X at 452-458.

On October 22, 2021, the magistrate judge issued a written decision finding Lesh guilty on both counts.  App. Vol. I at 49-62.  The judge held that prosecutors proved beyond a reasonable doubt that Lesh was the depicted snowmobiler, concluding that statements Lesh made on the March 8, 2021, YouTube interview constituted an admission of guilt.  App. Vol. I at 55-56.  Rejecting Lesh's contention that § 261.14 required prosecutors to show that the Forest Service had posted an "over-snow vehicle use map," the judge held that prosecutors adequately established

that Lesh's snowmobiling "was outside of the roads, trails, and areas designated for over-snow vehicle use because the Keystone Resort was closed due to the COVID-19 pandemic and the terrain park was not a designated route." App. Vol. I at 57.

The judge held in the alternative that the requirements of § 261.14 were satisfied because the Forest Service had, in fact, made a "winter motor vehicle map … publicly available." App. Vol. I at 57. The judge apparently had done some factual research on his own following the trial; his opinion provided an Internet address for a map that, he concluded, sufficed to satisfy the requirements of § 261.14. *Ibid.* The judge stated, "I take judicial notice of [the map], which notice may be taken at any time including on appeal." *Ibid*.

With respect to Count 2, the magistrate judge recognized that § 261.10(c) requires proof that the defendant's "sale or offer of sale or merchandise" or his "work activity or service" is "a commercial activity." App. Vol. I at 58. He concluded that Lesh was engaged in commercial activity when he snowmobiled at the Keystone Resort, photographed himself doing so, and posted the photos to his Instagram account. App. Vol. I at 59-61. He stated that the evidence showed that Lesh's actions were designed to draw attention to himself and thereby increase sales of Virtika, Lesh's outdoor-clothing business. *Ibid*. He cited *The New Yorker* article,

10

which stated that Lesh claimed that clothing sales increased 30% after he posted the photo supposedly depicting him standing on a log at Hanging Lake.  App. Vol. I at 59.

The magistrate judge's opinion did not address any of Lesh's constitutional claims, including claims under the First, Fifth, and Sixth Amendments and under the Vesting Clause of Article I, § 1.  *See generally* App. Vol. I at 49-62.

The court ordered Lesh to pay a $5,000 fine for each count, plus a special assessment fee of $25 per count, and to perform 160 hours of community service.  App. Vol. I at 63.  It stayed the sentence pending completion of any appeals.  App. Vol. I at 64.

## III.   THE APPEAL FROM THE MAGISTRATE JUDGE'S JUDGMENT OF CONVICTION

On March 10, 2023, the district court affirmed.  App. Vol. I at 173-188.  On Count 1, the court rejected Lesh's argument that "the Government failed to prove one of the elements of its case: that it had designated certain trails for over-snow vehicle use."  App. Vol. I at 180.  The court held that the magistrate judge "properly took judicial notice" that the Forest Service had undertaken the required designation. *Ibid.*  It upheld the magistrate judge's factual determination that the individual pictured snowmobiling at the Keystone Resort was Lesh, stating that that

11

determination was "within the bounds of reason."  App. Vol. I at 179.[7]

On Count 2, the district court rejected Lesh's contention that his snowmobiling and photography at the Keystone Resort were not "work activity" within the meaning of 36 U.S.C. § 261.10(c).  App. Vol. I at 180.  The court stated, "[A] reasonable trier of fact could conclude that the driving purpose of the snowmobiling session and its attendant photography was to promote Mr. Lesh's outdoor apparel company through social media."  App. Vol. I at 180.

In the district court, the Government argued that Lesh had waived various of his constitutional claims by failing to adequately raise them before the magistrate judge.  The district court rejected that argument and considered each of Lesh's constitutional claims on the merits.   App. Vol. I at 182 (Vesting Clause/non-delegation claim); App. Vol. I at 183-184 (First Amendment claim); *id.* at 12, App. Vol. I at 184-185 (due process claim).

---

[7] Lesh is not continuing to pursue an appeal from this factual finding.  Nor is Lesh appealing from the district court's affirmance of the magistrate judge's decision to admit Government Exhibits #10 and #11 (the Hanging Lake and Maroon Lake photos) and its rejection of Lesh's argument that statements contained in *The New Yorker* article were inadmissible hearsay and thus should not have been admitted into evidence.  *Id.* at 13-15, App. Vol. I at 185-187.  However, all of the *factual* findings do suffer from a clear deficiency that is before this Court—they were not found by a jury.  *See infra* section V.

The court rejected Lesh's First Amendment free-speech claim, asserting that Lesh was not being punished for his speech (his Instagram posts), and that the speech merely "provided proof that he had conducted commercial activity on National Forest lands." App. Vol. I at 184.

The court rejected Lesh's due process, void-for-vagueness challenge to 36 U.S.C. § 261.10(c). App. Vol. I at 184-185. While acknowledging that a regulation violates the Due Process Clause if it fails to "make it reasonably clear" that the regulation prohibits the conduct in which the defendant wishes to engage, the court held that § 216.10(c) meets that standard with respect to the "commercial" activity in which Lesh engaged on Forest Service land. *Ibid.*

The court rejected Lesh's Vesting Clause claim, concluding that 7 U.S.C. § 1011(f)—which authorizes the Secretary of Agriculture to adopt rules "to prevent trespasses and otherwise regulate the use and occupancy of [USDA] property"—sets out an "intelligible principle" to guide the Forest Service in adopting restrictions on commercial activity. App. Vol. I at 182.

Finally, the court rejected Lesh's claim that he was entitled to a jury trial under the Sixth Amendment. App. Vol. I at 176-178. The court acknowledged that "[a]s a matter of first principles, this [Sixth Amendment] argument is not unpersuasive."

13

App. Vol. I at 177. But it held that, under binding Supreme Court precedent, Sixth Amendment jury-trial rights are unavailable to criminal defendants charged with petty offenses. *Ibid*. (citing *Duncan v. Louisiana*, 391 U.S. 145, 159 (1968)).

## SUMMARY OF ARGUMENT

Both convictions should be overturned because the prosecution and the court's conviction suffer from failures of proof and constitutional deficiencies.

***First***, the United States did not prove the elements of either crime. To prove a violation of § 261.14, prosecutors were required to show that the Forest Service had posted maps showing where snowmobiling was and was not permitted within the relevant "administrative unit or Ranger District." Prosecutors in this case introduced no evidence that maps were ever posted. Nor did they demonstrate that Lesh ever performed § 261.10(c) "work activity or service"—which courts and the Forest Service have interpreted to mean commercial activity—on NFS land. Although prosecutors introduced evidence suggesting that Lesh photographed himself while snowmobiling on NFS land, they failed to show that Lesh ever sought or received compensation for that activity.

***Second***, prosecuting Lesh under § 261.10(c) violated his First and Fifth Amendment rights. Prosecutors do not contend that his snowmobiling and photography by themselves constituted commercial activity. Rather, they contend

14

that Lesh's activities became a crime only in conjunction with the posting of photographs on his Instagram account. Their theory is that the posting demonstrated the commercial nature of his activity—he supposedly believed that posting photos of himself snowmobiling on NFS lands would create publicity and thereby generate increased sales of his clothing line. But to punish Lesh for posting photos on Instagram is a clear violation of his First Amendment speech rights, particularly in the absence of evidence that he ever sought or received compensation for his postings. Moreover, § 261.10(c) is so vaguely worded that it fails to provide individuals with reasonable notice of what activities are and are not prohibited; convicting Lesh of failing to comply with an overly vague regulation violates his rights under the Fifth Amendment's Due Process Clause.

*Third*, the statute that purportedly authorizes the Department of Agriculture and the Forest Service to adopt regulations that criminalize misuse of NFS lands, 7 U.S.C. § 1011(f), fails to articulate any "intelligible principle" to guide USDA and USFS in adopting a regulation that criminalizes the speech activity of those who use NFS lands. Thus, to the extent that Congress authorized USDA to draft such a regulation, it improperly delegated (or divested) its legislative powers to a federal agency, in violation of Article I, § 1 of the Constitution (the "Vesting Clause").

15

*Fourth*, Lesh was denied a trial by jury, despite repeatedly requesting one. Although he was convicted of two misdemeanors, he nonetheless faced a combined sentence of one year in jail in addition to substantial fines. The denial thus violated Lesh's Sixth Amendment right "in *all* criminal prosecutions" to "a speedy and public trial, by an impartial jury" (emphasis added).

## ARGUMENT

### I. STANDARD OF REVIEW

The magistrate judge found the evidence at trial sufficient to find Lesh guilty of violating two Forest Service regulations. In reviewing a challenge to the sufficiency of the evidence to support a conviction, the Court views the evidence in the light most favorable to the Government, and it determines if there is "sufficient direct and circumstantial evidence, together with reasonable inferences to be drawn therefrom, from which a trier of fact could find the defendant guilty beyond a reasonable doubt." *United States v. Brown*, 200 F.3d 710, 713 (10th Cir. 1999). Lesh challenges the magistrate's interpretation of the two Forest Service regulations, including: (1) the extent of the Government's obligation to post maps before charging individuals with violating § 261.14; and (2) the definition of "commercial" activity for purposes of § 261.10(c). The Court reviews those challenges, as well as Lesh's constitutional claims, *de novo. Ibid.*

16

## II.  PROSECUTORS FAILED TO PROVE AN ESSENTIAL ELEMENT OF LESH'S ALLEGED VIOLATION OF 36 C.F.R. § 261.14: THAT THE FOREST SERVICE POSTED A MAP SHOWING WHERE SNOWMOBILING IS AND IS NOT PERMITTED WITHIN THE WHITE RIVER NATIONAL FOREST

To convict Lesh of violating the Forest Service's "Over-snow vehicle use" regulation, 36 C.F.R. § 261.14, prosecutors were required to prove (among other things) that roads, trails, or NFS lands within the Dillon Ranger District of the White River National Forest "have been designated for over-snow vehicle use" and that "these designations have been identified on an over-snow vehicle use map."[8]  Such designations and identification are conditions precedent to a conviction under the regulation; it specifies that the prohibition on "possess[ing] or operat[ing] an over-snow vehicle on [NFS] lands [within a given] administrative unit or Ranger District"—here, the Dillon Ranger District—does not take effect until "after" the requisite designations and identifications have occurred.   36 C.F.R. § 261.14.  Because it is uncontested that prosecutors introduced *no* evidence that the Forest Service satisfied these statutory prerequisites, Lesh's conviction on Count 1 must be overturned.

---

[8] The White River National Forest is divided into several Ranger Districts, including the Dillon Ranger District.  The Keystone Ski Resort is located within Dillon.  *See* Forest Service, Dillon Ranger District (last visited June 8, 2023), https://www.fs.usda.gov/recarea/whiteriver/recarea/?recid=4041.

17

Counsel for Lesh raised this objection to the adequacy of the Government's evidence in their motion for judgment of acquittal, in their closing argument, and in their appeal to the district court.  App. Vol II at 429-433, 462-473; App. Vol. I at 89-98.  The magistrate judge dismissed the objection, citing two grounds for concluding that the Government's evidence demonstrated a violation of § 261.14.  First, he held that signs posted at the Keystone Resort adequately notified Lesh that the Resort was closed throughout April, 2020 due to the Covid-19 pandemic.  App. Vol. II at 436; App. Vol. I at 57.  Second, he took judicial notice of a map posted online by the Forest Service as of October, 2022 and found that posting met the requirements of § 261.14.  App. Vol. I at 58.  With respect to both of the cited grounds, the magistrate's ruling was incorrect as a matter of law.

### A. Prosecutors Did Not Meet Their Evidentiary Burden by Introducing Evidence that "Closed" Signs Were Posted at Keystone Resort

The testimony of Christopher Ingram, a Keystone employee, did not satisfy prosecutors' evidentiary burden under § 261.14.  Ingram testified that at the start of Covid-19 pandemic, the Resort posted two orange "Ski Area Closed" signs at Keystone's base area.  App. Vol. II at 249-255.  He stated that he visited the ski area at least weekly during April, 2020 and that the signs remained in place throughout that period.  *Ibid.*

18

Ingram's testimony would have been relevant if Lesh had been charged with trespassing. But he was not; Count 1 charged him with operating "an over-snow vehicle" (a snowmobile) on NFS lands "not in accordance" with designations on an "over-snow vehicle use map." Whether or not Lesh had notice that Keystone was closed and whether or not he was trespassing on Keystone property simply are not relevant to whether prosecutors met their evidentiary burden regarding the posting of an over-snow vehicle use map. Indeed, Ingram testified that Keystone personnel in April, 2020 generally did not treat trespassing as a criminal matter. He stated that "in late April 2020," trespassers were encountered "on a number of occasions. Typically, we would advise the individuals that the ski area was closed and politely ask them to leave." App. Vol. II at 255. He testified that he considered trespassing by a snowmobiler to be a more serious infraction, App. Vol. II at 288; but he did not testify that Keystone's signage said anything about snowmobiles or that the Forest Service had posted an over-snow vehicle map.

## B. The Over-Snow Vehicle Use Map of Which the Magistrate Judge Took Judicial Notice Did Not Satisfy the Evidentiary Burden

Prosecutors introduced no evidence at trial that any roads, trails, or lands within the Dillon Ranger District had "been designated for over-snow vehicle use pursuant to 36 CFR 212.81" and that those designations had "been identified on an

19

over-snow vehicle use map," as are required by 36 C.F.R. § 261.14 before that regulation's restrictions on snowmobiling can become effective.[9]  At trial, the magistrate judge said that prosecutors did not need to introduce such evidence to show that Lesh violated § 261.14.  App. Vol. II at 436.

The magistrate's October 22, 2021 written decision repeated that mistaken interpretation of § 261.14, stating (based on the "closed" signs posted at Keystone as a result of the Covid-19 pandemic) that "it was abundantly clear to a reasonable person that these NFS lands were not designated for over-snow vehicle use."  App. Vol. I at 57.  But the decision also set out a second rationale for finding that the evidence supported a guilty verdict on Count 1:

> Regardless, because the winter motor vehicle use map is publicly available at https://www.fs.usda.gov/Internet/FSE_DOCUMENTS/ fseprd491314.pdf, I take judicial notice of it, which notice may be taken at any time including on appeal.  *United States v. Burch*, 169 F.2d 666, 671-72 (10th Cir. 1999) ("[O]fficial government maps are generally an acceptable source for taking judicial notice.").

*Ibid.*  The district court simply stated, without further elaboration, that the magistrate

---

[9] Section 212.81 specifies the manner in which the Forest Service is to disseminate over-snow vehicle use maps: "Over-snow vehicle use maps shall be made available to the public at headquarters of corresponding administrative units and Ranger Districts of the [NFS] and, as soon as practicable, on the Web site of the corresponding administrative units and Ranger Districts."

"properly took judicial notice" of the map.  App. Vol. I at 180.

Although the magistrate judge is correct that official government maps are "an acceptable source for taking judicial notice," the map he cited fails to supply the missing § 261.14 evidence.  The issue before this Court is whether the Forest Service posted an over-snow vehicle use map for the Dillon Ranger District *before* April 24, 2020, the date on which the Government alleges that Lesh used a snowmobile at the Keystone Resort.  The magistrate took judicial notice of a map that he was able to locate on the Forest Service's website at the time of his decision 18 months later— October 22, 2021.  The cited map thus does not prove that the Forest Service had completed the prerequisites necessary to make § 261.14 effective within the Dillon Ranger District as of the date of the offense charged in Count 1.

As this Court has observed, "[a] fact may be judicially noticed if it is not subject to reasonable dispute because it is … 'capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.'"  *Burch*, 169 F.3d at 671 (quoting Fed. R. Evid. 201(b)).  The "fact" of which the magistrate judge sought to take judicial notice—that the Forest Service had posted an over-snow vehicle use map for Dillon Ranger District as of April 24, 2020—is simply not "capable of accurate and ready determination" by reference to

a map uncovered by the magistrate judge in October, 2021.

## C. The History of Forest Service Snowmobiling Regulation Supports Appellant's Position

Lesh's argument—that his conviction on Count 1 must be overturned because prosecutors failed to prove that the Forest Service had posted an over-snow vehicle use map before the date of his alleged offense—is not based on some hyper-technical reading of 36 C.F.R. § 216.14. Rather, the history of Forest Service snowmobiling restrictions that preceded the agency's adoption of the regulation in 2015 demonstrates that the Government sought to bar criminal prosecutions unless officials in the affected Ranger District had previously focused on precisely where within the District snowmobiling should be permitted.

During the past 50 years, the number of Americans who wish to operate motor vehicles off road has skyrocketed. According to the Forest Service, from 1982 to 2009 alone, the number of people who drove off road nearly tripled. *See* Forest Service, *Use by Over-Snow Vehicles (Travel Management Rule)*, 80 Fed. Reg. 4500 (Jan. 28, 2015) ("Snowmobile Rule"). Much of that driving occurs on NFS lands, which cover 300,000 square miles within the United States—an area larger than the State of Texas. *See* Forest Service, *By the Numbers* (last visited June 5, 2023), https://www.fs.usda.gov/about-agency/newsroom/by-the-numbers. In cooler

climates, off-road driving includes use of snowmobiles (also called "over-snow vehicles" or "OSVs"). The Forest Service explicitly recognizes that "OSV use … is a legitimate use of NFS lands." 80 Fed. Reg. at 4510.

Before 2005, Forest Service regulations permitted each National Forest to decide for itself how, if at all, to restrict off-road travel by motor vehicle. *See* 36 C.F.R. § 295.2 (repealed 2005). "Under the pre-2005 regulations, many National Forests managers kept their Forests generally open to motor vehicle use unless there was a pressing reason for closure." *Winter Wildlands Alliance v. U.S. Forest Service*, 2013 WL 1319598 at *3 (D. Id. 2013).

Increased use of OSVs and other off-road motor vehicles on NFS lands has on occasion led to conflict between off-road drivers and environmental advocates who object that snowmobiles and other off-road vehicles can damage NFS lands. One highly publicized criminal prosecution of a snowmobiler, involving famed race-car driver Bobby Unser, became a flash point in that conflict. Unser was convicted of unlawful operation of a snowmobile in a National Forest Wilderness Area in Colorado, after he snowmobiled into the Area to escape a sudden blinding blizzard and nearly died from frostbite and dehydration. *United States v. Unser*, 165 F.3d 755 (10th Cir. 1999). Unser's case became a rallying point for snowmobile

enthusiasts who sought to limit Government regulation of snowmobiling.

In 2005, the Forest Service issued a new rule that imposed more comprehensive regulation of off-road travel on NFS lands.  Forest Service, *Travel Management, Designated Routes and Areas for Motor Vehicle Use*, 70 Fed. Reg. 68264 (Nov. 9, 2005) ("Travel Management Rule").  The Forest Service explained that "the new rule was needed because … the condition of the public lands was being negatively affected by an enormous increase in use from motorized vehicles." *Winter Wildlands*, 2013 WL 1319598 at *3.  The Rule required each administrative unit and Ranger District of the NFS to create "motor vehicle use maps" specifying where off-road motorized vehicles were and were not permitted to travel.  However, at the urging of snowmobile enthusiasts, the Rule explicitly exempted snowmobiles from the map requirement; it authorized local Ranger Districts to continue "to allow, restrict, or prohibit snowmobile use on a discretionary basis."  *Id.* at *4.

A federal court later ruled that the Travel Management Rule's exemption for snowmobiles was arbitrary and capricious because it was inconsistent with a 1972 Executive Order, which directed federal agencies to regulate the use of off-road vehicles on public lands.  *Id.* at *14.  The Forest Service adopted the Snowmobile Rule in 2015 in response to that court decision.  The Snowmobile Rule eliminated

24

the Travel Management Rule's exemption for snowmobiles and adopted 36 C.F.R. § 261.14 in its current form. Thus, it was only in 2015 that all Ranger Districts were first directed to issue over-snow vehicle use maps. The Snowmobile Rule makes clear that: (1) once a Ranger District has issued an over-snow vehicle use map pursuant to § 261.14, snowmobiling is prohibited in all areas within the District not explicitly designated for over-snow vehicle use; and (2) § 261.14 is not enforceable against a snowmobiler until such time as the Ranger District has issued such a map. *See* 80 Fed. Reg. at 4501-10.

The history of Forest Service regulation of snowmobiles thus conclusively demonstrates that § 261.14's language was drafted to make absolutely sure that no post-2015 snowmobiler on NFS land would face criminal prosecution under the new regulation *unless* the local Ranger District had completed the map-posting steps set out in the regulation and thereby provided clear notice of what snowmobiling was prohibited. In the absence of evidence from prosecutors that the Dillon Ranger District completed those steps between 2015 and the April, 2020 incident at Keystone, Lesh's conviction on Count 1 must be reversed.

## III. PROSECUTORS FAILED TO PROVE A VIOLATION OF 36 C.F.R. § 261.10(c) BECAUSE THEY DID NOT PROVE THAT LESH PERFORMED "WORK ACTIVITY OR SERVICE" IN THE WHITE RIVER NATIONAL FOREST

To convict Lesh of violating the Forest Service's "Occupancy and use"

25

regulation, 36 C.F.R. § 261.10(c), prosecutors were required to prove that Lesh, while on NFS lands, engaged in "[s]elling or offering for sale any merchandise or conducting any kind of work activity or service unless authorized by Federal law, regulation, or special-use authorization."   The courts uniformly hold, and the Government readily agrees, that the "work activity or service" prohibition focuses solely on commercial activity.  *See, e.g., United States v. Strong*, 79 F.3d 925, 928 (9th Cir. 1996) (citing USFS Special Uses Handbook); *United States v. Bartels*, 1998 WL 289231 at *4 (D. Colo. 1998); District Court Answer Brief of United States, App. Vol. I at 138-139.  Because prosecutors failed to show that Lesh engaged in *any* commercial activity while within the White River National Forest,[10] Lesh's conviction on Count 2 must be overturned.

The Government contends that Lesh engaged in two activities at the Keystone Ski Resort in April, 2020: (1) he snowmobiled at Keystone's terrain park; and (2) he arranged for his snowmobiling to be photographed.  It failed to present evidence that those alleged activities constituted "commercial" activity, as that term has been

---

[10] The requirement that § 261.10(c) "sale [of] merchandise" or "work or service activity" must occur on NSF land is set out in 36 C.F.R. § 261.1(a) (stating that "[t]he prohibitions in this part apply, except as otherwise provided, when: (1) An act or omission occurs in the National Forest System or on a National Forest System road or trail").

understood by federal case law.  Nor do those activities come within the Forest Service's own definition of that term:

> Commercial use or activity—any use or activity on [NFS] lands (a) where an entry or participation fee is charged, or (b) where the primary purpose is the sale of a good or service, and in either case, regardless of whether the use or activity is intended to produce a profit.

36 C.F.R. § 261.2.

There is no evidence that Lesh charged anyone a "fee" to watch him snowmobile at Keystone or to see pictures of his snowmobiling.  On the contrary, Lesh posted pictures of the Keystone snowmobiler on his personal Instagram account, where anyone could view the pictures for free.  App. Vol. II at 398-399. Nor is there evidence that the "primary purpose" of Lesh's snowmobiling and photography was "the sale of a good or service"; indeed, the magistrate judge *never made a primary purpose finding.  See generally* App. Vol. I at 49-62.

Among his many activities, Lesh operates a business, Virtika, that sells outdoor gear.  App. Vol. I at 257.  Prosecutors contend that Lesh's activities at Keystone were designed to generate increased sales for Virtika.  That contention is not supported by the evidence at trial.  One can reasonably assume that any company whose "primary purpose" is to generate sales would ensure that its advertising/publicity draws viewers' attention to the company name and/or its

27

products. Lesh's Instagram posts did not do so. The photos do not mention Virtika's name, they do not link to Virtika's Instagram handle or hashtag Virtika, and the snowmobiler depicted in the photos is not wearing Virtika products. App. Vol. I at 192; App. Vol. II at 397-398. So, any causal relationship between the posting of pictures by the company owner on his personal Instagram account and increased sales for the company is highly attenuated—particularly here, where the Instagram post makes no claim that the person depicted is Lesh and says nothing about Virtika. Indeed, there is no evidence that Virtika's sales increased following the April, 2020 Instagram post.

Case law interpreting § 261.10(c) makes clear that the regulation "prohibits the specified activities only when they are engaged in for consideration." *Strong*, 79 F.3d at 928. *Accord*, *Bartels*, 1998 WL 289231 at *4 ("Some evidence must be presented to show that the activity or service was commercial in nature—*i.e.*, for money or other consideration."). Because Lesh received neither cash nor anything else of value for his Keystone activities, his conviction on Count 2 must be reversed.[11]

---

[11] The magistrate judge noted that the Forest Service's definition of "commercial use or activity" states that an activity can come within that definition "regardless of whether the use or activity is intended to produce a profit." App. Vol.

The magistrate judge based his holding that Lesh's activities were "commercial in nature" not on a finding that "the primary purpose" of the activities was "the sale of a good or service," but rather on a finding that Lesh engaged in "still photography"—which (according to the magistrate) is by definition "commercial use or activity." App. Vol. I at 60. That finding was based on a misinterpretation of Forest Service regulations; they make clear that the Forest Service does not classify "still photography" as commercial in nature.

"Still photography" is defined not in Part 261 of Title 36 (the regulations at issue here) but in Part 251, which governs *noncommercial* uses of NFS lands. Section 251.50 explains that even if one's proposed use is noncommercial, there are some activities (one being "still photography") for which one must first obtain a special use authorization:

> A special use authorization is not required for noncommercial recreational activities, such as camping, picnicking, hiking, fishing, boating, hunting, and horseback riding, or for noncommercial activities involving the expression of views, such as assemblies, meetings, demonstrations, and parades, unless:
>
> * * *
>
> (2) The proposed use is still photography as defined in

---

I at 60 (quoting 36 C.F.R. § 261.2). But while a money-losing activity can still be deemed "commercial," nothing in § 261.2 suggests that one's "work activity or service" can be deemed "commercial" even when it is not engaged in for money or other consideration.

§ 251.51.

36 C.F.R. § 251.50(c).

That section leaves no doubt that, contrary to the magistrate's holding, "still photography" is categorized as a "noncommercial recreational activity" by USFS regulations. Prosecutors did not argue at trial that Lesh engaged in still photography (indeed, they claimed he was the subject of the photograph, not the photographer), nor did they charge him with failing to obtain a special use authorization before engaging in still photography.[12] Accordingly, the magistrate applied the wrong legal standard when he based his "commercial use or activity" holding on a finding that Lesh had engaged in "still photography" as defined by 36 C.F.R. § 251.51.

Case law cited by the magistrate judge regarding photography on NFS lands is inapposite. The magistrate cited *United States v. Patzer*, 15 F.3d 934 (10th Cir. 1993), for the proposition that "filming and photography on NFS lands have been found to be commercial activity falling within the scope of 36 C.F.R. § 261.10(c)." App. Vol. I at 60. But the defendant in *Patzer*, unlike Lesh, was paid cash for his

---

[12] Had prosecutors sought to charge Lesh with failing to obtain a special use authorization before engaging in a noncommercial activity that requires authorization, they would have had to charge him under 36 C.F.R. § 261.10(k), not 36 C.F.R. § 261.10(c).

work:  outfitting and photographing a group of big game hunters.  15 F.3d at 939.

*United States v. Lewton*, 575 Fed. Appx. 751, 753 (9th Cir. 2014), is similarly

inapposite, for the precise reason cited by the magistrate: the defendant was

convicted under 36 C.F.R. § 261.10(c) "for engaging in the commercial activity of

filming bighorn sheep *for profit*."  App. Vol. I at 60 (emphasis added).

Ruling that Lesh engaged in commercial "work activity or service" merely

because he publicized snowmobile activities on NFS lands would represent a major

expansion in the scope of § 261.10(c) criminal liability.  No one has ever been

convicted of violating the regulation under even remotely similar circumstances.

Many individuals, including Lesh, likely believe that publicizing their activities may

serve their long-term interests, whether in their business affairs or their personal

lives.  But self-promotion cannot plausibly be deemed "commercial" activity when

it is not directly tied to the promotion of a business or its products.

Lesh contends that the phrase "work activity or service" does not encompass

activities where, as here, the defendant has been paid no money or other

consideration for his activity.  If the Court determines that the regulation is

ambiguous regarding its application to such defendants, Lesh should still prevail—

under the rule of lenity.  The rule of lenity is a centuries-old canon of statutory

31

construction holding that "ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity." *Skilling v. United States*, 561 U.S. 358, 410 (2010).

The Government introduced into evidence two other pictures (both photo-shopped) that Lesh posted on his Instagram account—one depicting Lesh standing on a log floating in Hanging Lake (App. Vol. I at 214) and one depicting a naked Lesh defecating into Maroon Lake (App. Vol. I at 217). Prosecutors contend that these photos are evidence of motive, demonstrating that Lesh consistently seeks to promote himself as a renegade outdoorsman, as a means of promoting product sales. They note that Lesh told *The New Yorker* that Virtika's sales rose 30% following the June, 2020 posting of the Hanging Lake picture. App. Vol. I at 129-130.

But like the April, 2020 Instagram post depicting snowmobiling at Keystone, the two later Instagram posts neither mention Virtika nor make any effort to promote its products. *See*, *e.g.*, App. Vol. I at 217. Indeed, the two doctored Instagram photos undercut prosecutors' claim that the Keystone post was commercial activity that promoted product sales. If Lesh's flippant 30%-increase-in-sales comment is to be credited (as prosecutors have urged the courts to do), then any sales increases during

2020 are attributable to the Hanging Lake picture, not the Keystone pictures.[13]  And no rational business owner would have believed that posting the Maroon Lake photo would increase product sales.  That photo, posted a month after the Government filed its criminal charges, was doctored to show a naked Lesh pretending to defecate into the lake, with the caption, "Moved to Colorado 15 years ago, finally made it to Maroon Lake.  A scenic dump with no one there was worth the wait."  App. Vol. I at 217.  The far more plausible subtext here than "Buy Virtika products" is, "This picture expresses how I feel about the Forest Service and the way it has treated me."

Moreover, the evidence does not support prosecutors' contention that the primary purpose of everything Lesh says is to promote Virtika sales.  As *The New Yorker* article explains, Lesh is a social media influencer, work that is quite separate from his management of Virtika.  Lesh's prominence and his large Instagram following are products of his fame as a professional skier.  App. Vol. I at 199.  His

---

[13] Of course, Lesh has no way of knowing whether there was *any* causal relationship between the June, 2020 posting of the Hanging Lake picture and subsequent sales increases.  One plausible explanation for why Lesh would make this claim: when he spoke to *The New Yorker*, he was still facing five charges stemming from his June, 2020 "visit" to Hanging Lake.  Claiming that the Instagram posting caused a sales spike was another way to "poke the bear"—telling the Government, in effect: "You see what happens when you file bogus criminal charges against me?  It ends up helping me."

social media posts are driven much more by a desire for self-promotion than they are by any desire to promote Virtika sales.  Virtika has a significant media presence of its own; the Instagram account at issue in this case belongs to Lesh alone.[14]

### A. Punishing Lesh for His Instagram Post Violates His First Amendment Free-Speech Rights

The Government does not contend that Lesh's snowmobiling and photography at Keystone would violate § 261.10(c) if considered in isolation.  There is nothing inherently commercial about being photographed driving a snowmobile.  Rather, the Government contends that Lesh's activities were rendered commercial only after he posted pictures of those activities on his Instagram account.  In other words, Lesh is being criminally prosecuted for his speech—not his conduct.  That prosecution raises serious First Amendment concerns.  The Court should either: (1) adopt the narrower interpretation of § 261.10(c) espoused by Lesh and overturn

---

[14] In fact, Lesh's Instagram posts and his subsequent criminal proceedings may be hurting Virtika.  According to *The New Yorker*:

> By [the] summer [of 2020], Lesh had become a Rocky Mountain pariah. Coloradans circulated a petition to have his business license revoked and to have him banished from the state. … People protested outside Virtika's headquarters and spat on Lesh's car.  Three of his sponsored athletes ditched the brand.

App. Vol. I at 200.

the conviction on that basis, thereby avoiding the difficult constitutional issues; or else, (2) overturn the conviction on the ground that prosecutors have applied the regulation in a manner that violates Lesh's First Amendment rights.[15]

The district court stated that the Government is not prosecuting Lesh for his speech but rather is simply using Lesh's speech (his Instagram post) as evidence that his snowmobiling and photography were commercial in nature and thus sanctionable conduct. App. Vol. I at 183-184. That argument is inconsistent with the evidence presented at trial. The *only* aspect of Lesh's actions that rendered his conduct potentially "commercial" was his posting of photographs on Instagram, an expressive action subject to First Amendment protection. Without that posting, the snowmobiling and photography would unquestionably have been noncommercial: Lesh was not paid for his alleged activities at the Keystone Resort, nor did those activities generate a product that he was capable of selling. Under those

---

[15] Prosecutors argued in the district court that Lesh did not adequately raise his constitutional claims (including his First Amendment claims) at trial and thus forfeited his right to raise those claims on appeal. The district court rejected that argument and considered each of Lesh's constitutional claims on the merits. App. Vol. I at 182-183. Because those claims were considered and ruled on by the district court, prosecutors no longer have a plausible basis for asserting forfeiture. *United States v. Henson*, 9 F.4th 1258, 1274 (10th Cir. 2021), *vacated and remanded on other grounds*, 142 S. Ct. 2902 (2022).

35

circumstances, the Government is regulating Lesh's speech, and that regulation is subject to First Amendment constraints.

In *United States v. Caronia*, 703 F.3d 149 (2d Cir. 2012), the Second Circuit rejected a nearly identical "we're only using speech as evidence of misconduct" argument by the Government. Defendant Caronia, a pharmaceutical salesman, provided a doctor with truthful information about off-label uses of an FDA-approved drug being marketed by his company.[16] Prosecutors contended that by conveying this information, Caronia rendered the drug "misbranded," and they charged him with conspiracy to introduce a misbranded drug into interstate commerce. *Id.* at 152. In response to Caronia's contention that they were unconstitutionally restricting his truthful speech, prosecutors argued that they were merely using his speech as evidence of intent to engage in criminal conduct. The Second Circuit disagreed. It held that when the only evidence of misconduct was the speech at issue, "the proscribed conduct for which [the defendant] was prosecuted was precisely his speech"—and thus the prosecution was subject to First Amendment constraints. *Id.*

---

[16] When the Food and Drug Administration approves a drug for marketing, it also dictates the drug's labeling—setting forth the specific uses for which FDA has approved the drug. *Id.* at 152-53. But once a drug is on the market, doctors are permitted to (and regularly do) prescribe the drug for any use they deem medically warranted, including uses not specified on the product label (*i.e.*, off-label uses). *Id.*

at 160-62.[17]

*Caronia* is directly analogous to Lesh's prosecution. In both cases, the Government argued that it was merely using the defendant's speech as evidence of intent to engage in criminal activity. For the reasons explained by the Second Circuit, that argument is unavailing when, as here, the defendant's conduct would have been blameless (in this instance, not a violation of 36 C.F.R. § 261.10(c)) but for the defendant's speech. Because the Government is seeking to punish Lesh for his speech, its prosecution is subject to First Amendment scrutiny.

Moreover, its restrictions on Lesh's speech are subject to particularly strict scrutiny because they are content based. A content-based speech restriction occurs where, as here, "it requires enforcement authorities to examine the content that is conveyed to determine whether a violation has occurred." *Animal Legal Defense Fund v. Kelly*, 9 F.4th 1219, 1227 (10th Cir. 2021) (citations omitted). Lesh could not have been prosecuted under § 261.10(c) if, after snowmobiling at Keystone, he had posted a picture with different content—say, a picture of himself snowmobiling on private land. Under prosecutors' interpretation of § 261.10(c), Lesh was subject

---

[17] The court ruled that the prosecution violated the defendant's First Amendment rights and overturned the conviction. *Id.* at 168-69.

to prosecution precisely because his Instagram post depicted him snowmobiling on NFS land, thereby transforming his activities at Keystone into commercial "work activity or service."  A law that targets speech in a content-based manner is "presumptively unconstitutional and may be justified only if the government proves that [it is] narrowly tailored to serve compelling state interests." *Ibid.* (quoting *Nat'l Inst. of Family & Life Advocates v. Becerra*, 138 S. Ct. 2361, 2371 (2018)).

As interpreted by the Government, § 261.10(c) is not narrowly tailored.  The Government's apparent goal—preventing commercial enterprises from advertising their products by depicting their activities on NFS lands—could be fully achieved even if § 261.10(c) were construed more narrowly.  For example, the Forest Service could limit its restrictions to advertisements that mention the advertiser's name or depict products being offered for sale.  Because prosecutors have used § 261.10(c) to impose content-based speech restrictions on Lesh that are not narrowly tailored, § 261.10(c) as applied to Lesh violates his First Amendment rights.  Hence, his conviction on Count 2 should be overturned.

**B. 36 C.F.R. § 261.10(c) Is Void for Vagueness as Applied to Lesh**

The conviction on Count 2 should also be overturned because § 261.10(c), as applied to Lesh, is void for vagueness.  The regulation fails to provide Lesh and

other ordinary citizens with fair notice of what sorts of conduct it prohibits.

The Fifth Amendment provides that "[n]o person shall … be deprived of life, liberty, or property, without due process of law." "The prohibition of vagueness in criminal statutes" is an "essential of due process," required by both "ordinary notions of fair play and the settled rules of law." *Johnson v. United States*, 576 U.S. 591, 595 (2015). The void-for-vagueness doctrine "guarantees that ordinary people have fair notice of the conduct a statute proscribes" and "guards against arbitrary or discriminatory law enforcement by insisting that a statute provide standards to govern the actions of police officers, prosecutors, juries, and judges." *Sessions v. Dimaya*, 138 S. Ct. 1204, 1212 (2018). Courts undertake a particularly searching void-for-vagueness review when the statute at issue is criminal. *Ibid.*

As this Court has explained:

> A penal statute is void for vagueness if it fails to define the criminal offense with sufficient definitiveness so that ordinary people can understand what conduct is prohibited, or fails to establish minimal guidelines to govern law enforcement, so as to invite arbitrary and discriminatory enforcement.

*Patzer*, 15 F.3d at 941 (citations omitted).

Section 261.10(c), as applied to Lesh, fails on both counts. The regulation prohibits "conducting [on NFS land] any kind of work activity or service" unless

explicitly authorized.  All parties agree that the prohibition applies only to "work activity or service" that is commercial in character; but the regulation provides no guidance regarding the dividing line between prohibited commercial activity and permissible noncommercial activity.  Ordinary citizens like Lesh are left to guess.

Case law establishes that § 261.10(c) regulates only those "work activit[ies] or services" that are performed "for pecuniary remuneration or other gain, *i.e.*, for consideration."  *Strong*, 79 F.3d at 928.  But this case marks the first occasion on which the Government has argued that the requisite "remuneration or other gain" need not be paid directly to the person performing the work activity or services.  Prosecutors argue that, to prove a violation of the regulation, it suffices to show that the defendant acted with the expectation that his conduct might generate financial benefits at some time in the indefinite future.

As so construed, the regulation deprives ordinary citizens of the ability to distinguish permissible conduct from prohibited conduct.  Prosecutors argue that Lesh is prohibited from posting pictures of himself snowmobiling on NFS land, presumably because he: (1) has a large Instagram following; (2) operates a business whose customer base participates in wilderness adventures; (3) sells products that those who enjoy snowmobiling might want to buy; and (4) has some reason to

40

suspect that publicizing his activities could lead to increased product sales. If the applicability of § 261.10(c) requires an analysis of these various factors, then presumably the regulation is inapplicable if the business owner posting pictures is not well known, or has a customer base that is uninterested in snowmobiling, or sells products unrelated to snowmobiling.

Also, what about a business owner posting photographs of his family vacation on NFS-managed land while wearing clothing bearing his company logo? Or while wearing a product that his company offers for sale? Should it make a difference if the business owner's Instagram post does not identify himself as the person depicted? What about an athlete sponsored by an outdoor sportswear company posting a photo of themselves wearing their sponsored gear on a hike along an NFS trail on their day off? Or one of the hundreds, if not thousands, of #vanlife influencers posting photos of their camping setup at a NFS site which happens to include visibly branded products?[18] Section 261.10(c) fails to provide ordinary citizens with fair warning of how those various factors will be weighed in

---

[18] *See*, *e.g.*, Rachel Monroe, #Vanlife, the Bohemian Social-Media Movement, THE NEW YORKER (Apr. 17, 2017), https://www.newyorker.com/magazine/2017/04/24/vanlife-the-bohemian-social-media-movement.

determining whether they are engaging in prohibited "commercial" activity.

As construed by prosecutors in this case, § 261.10(c) also fails to establish minimal guidelines to govern law enforcement, thereby inviting arbitrary and discriminatory enforcement.  Indeed, the sequence of events in this case suggests just such arbitrary and discriminatory enforcement.  Prosecutors initially charged Lesh with (1) unauthorized snowmobiling at Keystone Resort, in violation of § 261.14; and (2) five counts arising from Lesh's supposed activities at Hanging Lake.  App. Vol. I at 18-20.  They later dropped the Hanging Lake charges after realizing that they lacked evidence that Lesh had ever been to Hanging Lake.  App. Vol. I at 21-22.  But rather than proceed with the § 261.14 charge alone, prosecutors brought a second charge based on Lesh's activities at Keystone.  App. Vol. I at 21-22.  This belated charge adopts a novel interpretation of "work activity or service" and seeks to apply § 261.10(c) in an unprecedented manner.  That sequence of events suggests that prosecutors went looking for a second charge to file against Lesh and then arbitrarily determined that the scope of § 261.10(c) might be expanded to fit the bill.  The void-for-vagueness doctrine is designed precisely to guard against this sort of arbitrary, on-the-fly enforcement decision.

## IV.  7 U.S.C. § 1011(f) LACKS AN "INTELLIGIBLE PRINCIPLE" AND INSTEAD GRANTS THE SECRETARY UNFETTERED LEGISLATIVE AUTHORITY IN VIOLATION OF THE NONDELEGATION DOCTRINE

By vesting Congress with "[a]ll legislative Powers," the President with "executive power," and the courts with "[t]he judicial power," the Constitution intentionally separates the branches of government to avoid collection of power within a single branch.  U.S. Const. art. I, § 1; U.S. Const. art. II, § 1; U.S. Const. art. III, § 1.  The nondelegation doctrine "is rooted in the principle of separation of powers that underlies our tripartite system of Government." *Mistretta v. United States*, 488 U.S. 361, 371 (1989).[19]  The Constitution mandates that only the people's elected representatives may adopt new federal laws restricting individual liberty. U.S. Const. art. I, § 1 ("*All* legislative Powers herein granted shall be vested in a Congress of the United States[.]") (emphasis added).  The grant of "[a]ll legislative Powers" to Congress means that Congress may not transfer to others "powers which are strictly and exclusively legislative"—such as the power to write criminal laws.

---

[19] Courts, and the Defendant below, have often discussed the violations of the Vesting Clause, U.S. Const., Art. I, § 1, as the "nondelegation doctrine."  But such violations are more accurately termed as "divesting" legislative power.  The word "delegation" generally presupposes the right of the delegator to easily reclaim the delegated power from the delegatee.  But when Congress adopts legislation assigning—or really, divesting—its legislative powers to executive branch entities, it can be extremely difficult for Congress to adopt new legislation repealing the divestment, in part because the President holds the veto power to disapprove repeal.

*Wayman v. Southard*, 23 U.S. (10 Wheat.) 1, 42-43 (1825); *see also A.L.A. Schechter Poultry Corp. v. United States*, 295 U.S. 495, 529 (1935) ("Congress is not permitted to abdicate or to transfer to others the essential legislative functions with which it is thus vested.").

The Supreme Court has consistently reinforced its understanding that Article I's Vesting Clause precludes Congress from delegating legislative power. *See*, *e.g.*, *Marshall Field & Co. v. Clark*, 143 U.S. 649, 692 (1892) (describing nondelegation as "a principle universally recognized as vital to the integrity and maintenance of the system of government ordained by the constitution."); *J.W. Hampton, Jr., & Co. v. United States*, 276 U.S. 394, 406 (1928) ("[I]n carrying out that constitutional division into three branches it is a breach of the national fundamental law if Congress gives up its legislative power and transfers it to the President."); *Gundy v. United States*, 139 S. Ct. 2116, 2123 (2019) (plurality op.).

The Court has recognized that "Congress can give Executive agencies limited discretion to 'implement and enforce the laws.'" *United States v. Pheasant*, No. 321CR00024RCJCLB, 2023 WL 3095959, at *5 (D. Nev. Apr. 26, 2023) (quoting *Gundy*, 139 S. Ct. at 2123 (plurality op.)).  The constitutionality of any delegation "sits between Congress properly 'conferring authority or discretion as to [the law's]

execution' or improperly delegating exclusively legislative power." *Id.* (quoting *Field v. Clark*, 143 U.S. at 693-94 (quotation omitted)).  To determine whether a delegation is constitutionally permissible, courts "must address … (1) whether Congress has delegated power to the agency that would be legislative power but-for an intelligible principle to guide its use and, if it has, (2) whether it has provided an intelligible principle such that the agency exercises only executive power." *Jarkesy v. Sec. & Exch. Comm'n*, 34 F.4th 446, 461 (5th Cir. 2022).

But even the Supreme Court has struggled with defining which side of the line a particular delegation falls on. Traditionally the Court has allowed agencies to exercise authority so long as Congress set out an "intelligible principle to which the person or body authorized to [exercise the delegated authority] is directed to conform." *Mistretta*, 488 U.S. at 372.  But that test lacks clear contours. Furthermore, in recent years, five members of the Court have expressed interest in at least exploring a reconsideration of that standard.  *See Gundy*, 139 S. Ct. at 2131-42 (Gorsuch, J., dissenting, joined by Roberts, C.J., and Thomas, J.); *id.* at 2130-31 (Alito, J., concurring in the judgment); *Paul v. United States*, 140 S. Ct. 342 (2019) (mem.) (Kavanaugh, J., statement respecting the denial of certiorari).

The statute that authorizes USDA and the Forest Service to adopt regulations that

criminalize misuse of NFS lands, 7 U.S.C. § 1011(f), fails to articulate any "intelligible principle" to guide them in adopting a regulation that criminalizes the speech activity of those who use NFS lands. Section 1011(f) permits the Secretary of Agriculture "[t]o make such rules and regulations as he deems necessary to prevent trespasses and otherwise regulate the use and occupancy of property acquired by, or transferred to, the Secretary for the purposes of this subchapter, in order to conserve and utilize it or advance the purposes of this subchapter."

In *Pheasant*, a district court was confronted with a similarly broad delegation of authority to the Secretary of the Interior to "promulgate regulations on behalf of the BLM [Bureau of Land Management]." 2023 WL 3095959, at *6. The defendant in that case was operating a motorized dirt bike in the Moon Rocks area of Nevada which is managed by the Department of Interior's Bureau of Land Management ("BLM"). *Id.* at *1. BLM officers attempted to stop the dirt bikers leading to a confrontation between BLM officers and Mr. Pheasant. *Id.* at *2. In the heat of that exchange, Mr. Pheasant demanded to know why he was being stopped, whether he was being detained, and expressed his views of the situation and the officers' conduct with expletives and other intense language. *Id.* at *3. He was subsequently charged with three counts and argued that two of the counts—"Resisting Issuance

46

of Citation or Arrest" and "Failure to Use Required Taillight at Night"—were based on violations of regulations promulgated under a statute that violates the nondelegation doctrine. *Id.* at *3, 5.

In conducting its nondelegation analysis the *Pheasant* court found that, as here, the "regulations [at issue] 'alter' the legal rights of those that use BLM land." *Id.* at *6. As such, the delegation at issue was legislative in nature. So too here. Section 1011(f)'s delegation is clearly legislative, as it permits promulgation of rules that have "the purpose and effect of altering the legal rights, duties and relations of persons, including … Executive Branch officials … [who are] outside the legislative branch." *INS v. Chadha*, 462 U.S. 919, 952 (1983).

Section 1011(f) also lacks any principle, let alone an intelligible one, to guide the agency's adoption and enforcement of regulations, particularly 36 C.F.R. § 261.14 and 36 C.F.R. § 261.10(c). As in *Pheasant*, the statute at issue here, 7 U.S.C. § 1011(f), purports to provide the Secretary of Agriculture with "unfettered legislative authority" to promulgate rules addressing trespass, use, and occupancy of public lands managed by the Forest Service. *Pheasant*, 2023 WL 3095959, at *7 (the rule at issue permitted the Secretary of the Interior to "promulgate rules regarding the management, use, and protection of the public lands"). As part of this

47

extensive legislative delegation, USDA and the Forest Service purportedly have "the power to write regulations *criminalizing* behavior." *Id.* But that is a power that belongs to Congress and Congress alone. Indeed, there are few greater threats to personal liberty than executive agencies "creat[ing] the very crimes they are tasked with enforcing" which "effectively turns [an agency] into 'the expositor, executor, and interpreter of criminal laws.'" *Id.* (quoting *Aposhian v. Wilkinson*, 989 F.3d 890, 900 (10th Cir. 2021) (Tymkovich, C.J., dissenting from vacatur of rehearing en banc as improvidently granted) (emphasis omitted)). Thus, the view that "[i]f the intelligible principle standard means anything, it must mean that a total absence of guidance is impermissible under the Constitution[,]" *Jarkesy*, 34 F.4th at 462, carries even more weight when an individual's liberty interests are at stake.

This Court should overturn Mr. Lesh's convictions.

## V. LESH WAS DEPRIVED OF HIS CONSTITUTIONAL RIGHT TO A TRIAL BY JURY

The Constitution of the United States grants the right to a jury trial for "all crimes," U.S. Const. art. III, § 2, and in "all criminal prosecutions," U.S. Const. amend. VI. However, that absolute right has been eviscerated in certain cases, like Mr. Lesh's, where the maximum prison term is six months or less under the theory that they are petty offenses. So, while conviction for such crimes still involves all the formal trappings of criminal proceedings, places a defendant's personal liberty

48

interests directly at stake, and the defendant likely suffers collateral consequences from conviction, petty offenses are inexplicably treated as something less than what they are: criminal laws enforced by criminal penalties.  Andrea Roth, *The Lost Right to Jury Trial in "All" Criminal Prosecutions*, 72 DUKE L.J. 599, 602-603 (2022).

The Constitution sets forth a "particular mode" for criminal cases—trial by jury—and that mode specifies "an obligation to try *all* criminal cases" in that manner.  THE FEDERALIST NO. 83, at 559 (Alexander Hamilton) (J.E. Cooke ed., 1961) (emphasis added).  The Framers "considered the right to trial by jury 'the heart and lungs, the mainspring and the center wheel' of our liberties, without which 'the body must die; the watch must run down; the government must become arbitrary.'" *United States v. Haymond*, 139 S. Ct. 2369, 2375 (2019) (*quoting* Letter from Clarendon to W. Pym (Jan. 27, 1766), in 1 Papers of John Adams 169 (R. Taylor ed. 1977)).  In support of that end, they "adopted the Sixth Amendment's promise" of a right to a jury trial "[i]n all criminal prosecutions[.]" *Id.* at 2376.  Together with the Fifth Amendment, "these pillars of the Bill of Rights ensure that the government must prove to a jury every criminal charge beyond a reasonable doubt[.]" *Id.*

Despite the Constitution's clear edicts, an inexplicable, countertextual divergence from the right to trial by jury has developed under the theory that such

49

offenses were "exempt from the otherwise comprehensive language of the Sixth Amendment's jury trial provisions" because they "were tried without juries both in England and in the Colonies[.]" *See Duncan*, 391 U.S. at 160. But this divergence is untethered from the Framers' understanding of that right. As constitutional scholar Philip Hamburger has put it, "[T]he Supreme Court casually assumes that there was a uniform understanding of [the right to a jury]." Philip Hamburger, Is ADMINISTRATIVE LAW UNLAWFUL? 244 (2014). Yet, at the time of the Founding,

> there were divergent traditions about the extent of the right to a jury in criminal cases: There was the traditional right to a jury in all cases, as guaranteed by the Magna Charta and the common law, but there also was the modified version of the right, as adjusted by the [seventeenth- and eighteenth-century] statutes on petty offenses.

*Id.* The Supreme Court's determination that petty offenses are not subject to the Sixth Amendment's guarantees considers only the existence of petty offense statutes and "takes for granted that the modified right had displaced the previously unrestricted common law right" to a trial by jury for criminal offenses. *Id.* More troubling, this supposed displacement of the Sixth Amendment right to a trial by jury finds its origins in dictum, which, to the determinant of countless defendants, "was never fully and fairly litigated" in the first instance. *See Callan v. Wilson*, 127 U.S. 540, 556-57 (1888); *see also* A. Roth, *supra* at 608-614, 632 (discussing *Callan*).

50

This error has stubbornly persisted, and (possibly) until now the petty offense exception has never been fully litigated. *See* A. Roth, *supra* at 605.

Indeed, it is impossible to square the Supreme Court's line of cases denying the right to trial by jury in petty offense prosecutions with Founding-era writings. Among the Declaration of Independence's bill of grievances, the Founders included an indictment "[f]or depriving us in many cases, of the benefit of Jury trial[.]" THE DECLARATION OF INDEPENDENCE, para. 20 (U.S. 1776). George Washington decried Britain's transporting colonial offenders into distant venues with no trial by jury "where it is impossible from the nature of the thing that justice can be obtained." John Berlau, *A Declaration of Independence from the Administrative State?*, Law & Liberty Blog (July 4, 2022), https://lawliberty.org/a-declaration-of-independence-from-the-administrative-state/. As Hamilton noted, even "friends and adversaries of the [proposed Constitution], if they agree in nothing else, concur at least in the value they set upon the trial by jury[.]" THE FEDERALIST NO. 83, at 562. He reasoned that if there was "any difference between them" it "consist[ed]" of how they viewed the right with those in favor of the proposed Constitution "regard[ing] it as a valuable safeguard to liberty" and adversaries of the proposal "represent[ing] it as the very

palladium of free government." *Id.* Several state constitutions, like the U.S. Constitution, took the approach of requiring juries in "all criminal prosecutions." P. Hamburger, *supra* at 244.

Similarly, in 1971, Justice Black, joined by Justice Douglas, dissented from the promulgation of what is now Federal Rule of Criminal Procedure 58(E), denying the right to a jury trial for petty offenses, because "[b]y its own terms, the [Sixth] Amendment makes no exception for so-called 'petty offenses.'" *Rules of Procedure for the Trial of Minor Offenses Before United States' Magistrates*, 51 F.R.D. 197, 209 (1971) (Black, J. dissenting). Noting the "puzzling" nature of the rules, he argued that their adoption "dilut[ed] the straightforward and fundamental Sixth Amendment guarantee of trial by jury[.]" *Id.* Further highlighting the constitutional problem with denying the jury trial right for petty offenses, he noted that "judicial lawmaking" that strips the right to trial by jury in petty offense prosecutions "is wholly at odds with the philosophy of separation of powers contained in our Constitution." *Id.* (citing U.S. Const. art. I, § 1). But he noted that even under its Article I powers, Congress could not impose such a rule since "any legislation impairing Sixth Amendment rights would of course be unconstitutional." *Id.*

As the Supreme Court recently stated, "[o]nly a jury, acting on proof beyond a reasonable doubt, may take a person's liberty." *Haymond*, 139 S. Ct. at 2373. Thus, it is hard to reason why the same constitutional violation does not occur because the person's liberty is taken, or threatened to be taken, for "less than six months"—the court-recognized penalty threshold for a "petty" offense, and which Appellant faced in this case. *See Lewis v. United States*, 518 U.S. 322, 326 (1996) ("An offense carrying a maximum prison term of six months or less is presumed petty, unless the legislature has authorized additional statutory penalties so severe as to indicate that the legislature considered the offense serious."). Indeed, that determination seems completely arbitrary when imprisonment—even for arguably short periods of time—takes one's liberty and may induce life-altering collateral consequences, such as loss of a job. In the alternative, and despite the *Lewis* Court's contrary holding, *see* 518 U.S. at 330, where, as here, the accused is charged with multiple "petty offenses" which each carry terms of imprisonment of less than six months, the cumulative effect of those charges, *i.e.*, a possible term of imprisonment longer than six months, should, at a minimum, establish the right to a jury.

On its face the so-called petty offense exception to the Sixth Amendment is "ahistorical and contradicts the Constitution's text." A. Roth, *supra* at 604. And

53

there can be little doubt that the ample jury trial right recognized by the Founders in the Constitution is applicable to this matter, and this Court should hold that Appellant was deprived of his constitutional right to a trial by jury.  The district court acknowledged that Lesh's Sixth Amendment argument was "[a]s a matter of first principles … not unpersuasive."  App. Vol. I at 177.  But it held that, under binding Supreme Court precedent, Sixth Amendment jury-trial rights are unavailable to criminal defendants charged with petty offenses.  *Ibid.* (citing *Duncan*, 391 U.S. at 159).  While Appellant recognizes that this Court is bound by the same precedent, courts can act consistent with precedent while also recognizing that a challenged precedent may be incompatible with the Constitution.  *Cf. Am. Inst. for Int'l Steel, Inc. v. U.S.*, 376 F. Supp. 3d 1335, 1345 (Ct. Int'l Trade 2019) (Katzmann, J., *dubitante*) (collecting *dubitante* opinions).

## CONCLUSION

For the foregoing reasons, Mr. Lesh's convictions under 36 C.F.R. § 261.14 and 36 C.F.R. § 261.10(c) should be overturned.

## POSITION REGARDING ORAL ARGUMENT

Because this case raises significant statutory and constitutional issues, and because the decisional process would be aided by oral argument, Appellant respectfully requests that the Court calendar the matter for argument.

Respectfully submitted,

*/s/ Kara M. Rollins*
Kara M. Rollins
   *Counsel of Record*
Richard A. Samp
NEW CIVIL LIBERTIES ALLIANCE
1225 19th Street NW, Suite 450
Washington, DC 20036
(202) 869-5210
kara.rollins@ncla.legal

Dated: June 8, 2023                    *Counsel for Defendant-Appellant*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of the Federal Rules of Appellate Procedure 29(a)(5) and 32(a)(7)(B)(i) because it contains 12,403 words.

This brief also complies with the typeface and type-style requirements of the Federal Rules of Appellate Procedure because it was prepared using Microsoft Word 2016 in Times New Roman 14-point font, a proportionally spaced typeface.

*/s/ Kara M. Rollins*

Kara M. Rollins
  *Counsel of Record*

Dated: June 8, 2023

## CERTIFICATE OF SERVICE

I hereby certify that on June 8, 2023, I electronically filed the foregoing Appellant's opening brief with the Clerk of Court using the CM/ECF system which sent notification of such filing to all counsel of record.

*/s/ Kara M. Rollins*

Kara M. Rollins
*Counsel of Record*

Dated: June 8, 2023

# ADDENDA

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Daniel D. Domenico**

Case No. 1:22-cr-00033-DDD-GPG

UNITED STATES OF AMERICA,

 Plaintiff-Appellee,

v.

DAVID LESH,

 Defendant-Appellant.

---

### ORDER AFFIRMING CONVICTIONS

---

 Tom Wolfe died a few years before the events of this case took place, so we are left to imagine what he might have made of the intersection of COVID-pandemic lockdowns, social-media culture, and Defendant-Appellant David Lesh's business model. This order addresses one product of that intersection: Mr. Lesh's conviction on two federal misdemeanors.

 Mr. Lesh owns a company that sells outdoor equipment and apparel. He also is "a prominent skier with a large Instagram following" who frequently posts provocative images on that social-media platform. (Doc. 122 at 3.) Whether the social-media posts exist to support the company, or whether the company exists to capitalize on the social-media

fame is perhaps an open question. That the two are intertwined, how-ever, does not seem to be in dispute.[1]

This case stems from posts Mr. Lesh made on Instagram between April and October of 2020. In April, Mr. Lesh posted a photo of a snow-mobiler jumping into the air in the terrain park at Keystone Resort, with the comment, "solid park sesh,[2] no lift ticket needed." (Doc. 125-1 at 2.) In June, he posted photographs appearing to show him standing in the protected area of Hanging Lake. (*Id.* at 27.) And in October, in his own counsel's words, he "posted a photograph to his personal Instagram ac-count that depicted him 'defecating in Maroon Lake,' and bearing the caption, 'a scenic dump with no one there was worth the wait.'" (Doc. 122 at 10; *see also* Doc. 125-1 at 28.)

Classlessness is within the bound of the First Amendment, so none of these posts was itself the subject of criminal charges. The conduct that appeared to be depicted in them, however, was. Since Keystone, Hang-ing Lake, and Maroon Lake are all located on U.S. Forest Service lands, the United States charged Mr. Lesh with one count of operating a snow-mobile outside authorized areas based on the Keystone incident, and one count of selling or offering for sale merchandise or conducting work ac-tivity without authorization on lands administered by the National For-est Service. (Doc. 90 at 1.)

Following a bench trial, Magistrate Judge Gordon P. Gallagher con-victed Mr. Lesh on both counts. Mr. Lesh now seeks to vacate his

---

[1]   (*See, e.g.*, Doc. 130 at :32-:45 (asserting that a magazine article de-scribing some of the facts of this case "only captures one aspect of me, one part of my life, one part of our marketing, one part of my company"); Doc. 122 at 8 (noting Mr. Lesh had stated that his sales increased thirty percent after particular posts gained widespread notoriety).)

[2]   Short for the too-long "session."

convictions. Because Mr. Lesh's legal arguments are misplaced and the evidence at trial was sufficient to convict him, the convictions are affirmed.

## BACKGROUND

In April 2020, the Keystone Resort, located on National Forest Service lands, was closed due to the COVID-19 pandemic. (Doc. 90 at 3.) On April 25, 2020, Mr. Lesh posted a photo to his Instagram account of two individuals, one of whom was operating a snowmobile on a Keystone ski jump. (Doc. 125-1 at 1.) The following day, Christopher Ingham, the Director of Mountain Operations for Keystone Resorts, found snowmobile tracks around a Keystone ski jump, even though employees were not using snowmobiles during the resort's closure. (Doc. 90 at 4.) On June 10 and October 21, 2020, Mr. Lesh posted images showing him standing in protected bodies of water on National Forest Service lands, Hanging Lake and Maroon Lake, though, unlike the Keystone photo, the Government does not assert that these are authentic photographs. (*Id.* at 5.) On January 11, 2021, the *New Yorker* published a profile of Mr. Lesh that quoted him saying that the illegality of his photographed behavior increased his sales and that he wanted the Government to charge him for the violations. (*Id.* at 5-6.)

The United States Attorney for the District of Colorado initially charged Mr. Lesh with operating a snowmobile outside of a designated route and improperly entering Hanging Lake and Maroon Lake. (Doc. 1.) The Government then dropped the charges related to Hanging Lake and Maroon Lake, but added a separate charge for conducting work activity without authorization. (Doc. 53.) After a bench trial, Judge Gallagher found Mr. Lesh guilty of both violations. (Doc. 89.) Mr. Lesh appeals those convictions. (Doc. 107.)

DISCUSSION

Mr. Lesh raises four issues on appeal. He argues that the Government failed to present evidence sufficient to prove either violation, that Judge Gallagher erred in permitting the Government to introduce the *New Yorker* article, that admitting evidence of the Hanging Lake and Maroon Lake posts unfairly prejudiced him, and that he was deprived of his right to a jury trial. (Doc. 122.)

The scope of an appeal from a magistrate judge's judgment of conviction to a district court is the same as an appeal from a district court to a court of appeals. Fed. R. Crim. P. 58(g)(2)(D). I therefore review legal matters, including sufficiency of the evidence, *de novo*, "viewing all evidence and any reasonable inferences drawn therefrom in the light most favorable to the conviction." *United States v. Fernandez*, 24 F.4th 1321, 1326 (10th Cir. 2022).

## I. Binding precedent forecloses Mr. Lesh's argument that he is entitled to a jury trial.

The two offenses for which Mr. Lesh was tried each carry a maximum sentence of six months' imprisonment. *See* 36 C.F.R. § 261.1b. They are thus Class B misdemeanors and, by statute and binding precedent, petty offenses. *See* 18 U.S.C. § 3559(a)(7) (offense with maximum six-month term of imprisonment is a Class B misdemeanor); 18 U.S.C. § 19 (Class B misdemeanor is a petty offense); *Lewis v. United States*, 518 U.S. 322, 326 (1996) (offenses with maximum prison terms of six months or less are presumptively petty offenses).

As Mr. Lesh points out, the text of the U.S. Constitution says that "[t]he trial of all crimes, except in cases of impeachment, shall be by jury," art. III, § 2, and that "[i]n all criminal prosecutions, the accused

- 4 -

shall enjoy the right to a speedy and public trial, by an impartial jury," amend. VI. (*See* Doc. 122 at 28.) He also provides an impressive array of authorities arguing that the Constitution's text should mean what it says, with sources ranging from the Declaration of Independence, to Alexander Hamilton's Federalist No. 83, to Justices Black and Douglas, to Professor Philip Hamburger. (Doc. 122 at 37-38.)

As a matter of first principles, this argument is not unpersuasive. "Constitutional analysis must begin with 'the language of the instrument,'" and "all" is not a term generally considered to contain much ambiguity. *Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228, 2244-45 (2022) (quoting *Gibbons v. Ogden*, 9 Wheat. 1, 186-89 (1824)). The Supreme Court has in fact recently said, "Only a jury, acting on proof beyond a reasonable doubt, may take a person's liberty." *United States v. Haymond*, 139 S. Ct. 2369, 2373 (2019). But here in an inferior court, first principles must yield to binding precedent, and "the Supreme Court has long held that 'there is a category of petty crimes or offenses which is not subject to the Sixth Amendment jury trial provision.'" *United States v. Luppi*, 188 F.3d 520, 1999 WL 535295, at *6 (10th Cir. 1999) (unpublished table decision) (quoting *Duncan v. Louisiana*, 391 U.S. 145, 159 (1968)). "Even where a defendant is charged with multiple petty offenses which, taken cumulatively, could result in a sentence longer than six months, the Sixth Amendment right to a jury trial does not apply." *Id.* (citing *Lewis*, 518 U.S. at 330).

Given that binding precedent, whether, as Mr. Lesh argues, it is "impossible" (or necessary) "to square the Supreme Court's line of cases denying the right to trial by jury in petty offense prosecutions with Founding-era writings" is not for me to say. *See Dobbs*, 142 S. Ct. at 2262 ("An erroneous constitutional decision can be fixed by amending the Constitution, but our Constitution is notoriously hard to amend.

Therefore, in appropriate circumstances [the Supreme Court] must be willing to reconsider and, if necessary, overrule constitutional decisions." (citations omitted)). I am required to apply those cases, as was Judge Gallagher. Neither of us can reverse the convictions on that basis.

## II.  The evidence was sufficient to convict Mr. Lesh.

Mr. Lesh argues that the Government failed to prove his guilt on each count beyond a reasonable doubt. His primary argument is that the Government did not produce sufficient evidence to convict him, but he also raises other contentions that the Government calls "ancillary."

### A.  Mr. Lesh's general sufficiency-of-the evidence arguments

Mr. Lesh's sufficiency-of-the-evidence arguments can be dismissed quickly. Appellate review on this basis is "highly deferential." *United States v. Burtrum*, 21 F.4th 680, 685-86 (10th Cir. 2021). The relevant question is not whether I believe the evidence establishes guilt beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 316 (1979) (holding that the requirement to prove criminal guilt beyond a reasonable doubt is an essential feature of due process). It is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact" could do so. *Id*. at 319; *see also Fernandez*, 24 F.4th at 1326 (reversal permissible "only when no reasonable [finder of fact] could find the defendant guilty beyond a reasonable doubt").

### 1.  Operating a snowmobile off a designated route in violation of 36 C.F.R. § 261.14

To support his conclusion that Mr. Lesh had operated a snowmobile off a designated route, Judge Gallagher pointed to (1) "photographs showing snowmobile track marks in the snow . . . taken on the morning of April 25, 2020," (2) "testimony that resort employees were neither

using nor had access to snowmobiles during the time that the resort was closed," (3) a *New Yorker* magazine article quoting Mr. Lesh as saying "[h]ere I am—or supposedly me—with one misdemeanor, in a terrain park," and (4) Mr. Lesh's comment on a podcast that "nothing that he [the author of the article] said was untrue or unfair" (brackets in original). (Doc. 90 at 7-8.)

This is plenty.[3] Mr. Lesh points out a variety of other theories of what might have been depicted in the photo he posted: he had posted photos of friends snowmobiling in the past; he posted it not because it was actually him but "to irritate the Government"; it might have been taken a month earlier; etc. (*See* Doc. 122 at 11-13.) But those interpretations, while also perhaps plausible, did not persuade the factfinder here. The existence of other possible explanations for the photograph does not make the factfinder's conclusion—that it was a photo of Mr. Lesh taken while the park was closed—unreasonable. The evidence is therefore sufficient as a matter of law.

While Mr. Lesh is right that the snowmobile operator is unidentifiable in the photograph and nobody testified that it was him, inferring that it was Mr. Lesh was "within the bounds of reason." *United States v. Triana*, 477 F.3d 1189, 1195 (10th Cir. 2007). Mr. Lesh's own public post more than suggests that he was the one taking advantage of Keystone's closure to get in a "solid sesh." (*See* Doc. 125-1 at 2.) His apparent affirmation of a magazine article explicitly saying the photos were "of him" only adds to the weight of the evidence. (*See* Doc. 90 at 8.) Making that determination was therefore up to the factfinder, and his weighing of the evidence is not grounds for reversal.

---

[3] Judge Gallagher also described a number of other factual findings that support this conclusion. (*See* Doc. 90 at 3-6.)

Mr. Lesh also argues that the Government failed to prove one of the elements of its case: that it had designated certain trails for over-snow vehicle use. (Doc. 122 at 13.) If the National Forest Service designates certain areas for over-snow vehicle use, it is forbidden to operate over-snow vehicles in non-designated areas. 36 C.F.R. § 261.14. But the designation had been "identified on an over-snow vehicle use map," of which Judge Gallagher properly took judicial notice. *See* Fed. R. Evid. 201(b); *United States v. Burch*, 169 F.3d 666, 672 (10th Cir. 1999).

### 2. Conducting work activities in violation of 36 C.F.R. § 261.10(c)

Mr. Lesh's main challenge to the sufficiency of the evidence for his second conviction, under Section 261.10(c), is the same as for his first count: that the Government didn't prove Mr. Lesh was the one jumping the snowmobile. As explained above, however, the Government introduced sufficient evidence to permit that inference.

Mr. Lesh alternatively argues that even if it is him snowmobiling, snowmobiling is not "work activity." (Doc. 122 at 14.) "Section 261.10(c) prohibits . . . (1) conducting any kind of work activity or service; (2) on lands encompassed by the regulation; (3) without a special use authorization." *United States v. Parker*, 761 F.3d 986, 993 (9th Cir. 2014) (internal quotation marks omitted). Photography can be work activity if it is conducted for commercial purposes. *See United States v. Patzer*, 15 F.3d 934 (10th Cir. 1993) (upholding a conviction for photographing a hunting trip). Here, a reasonable trier of fact could conclude that the driving purpose of the snowmobiling session and its attendant photography was to promote Mr. Lesh's outdoor apparel company through social media. (*See, e.g.*, Doc. 90 at 11; Doc. 89 at 122-23; Doc. 125-1 at 9-24 (describing the use of social media to generate publicity for Mr. Lesh's company).) Mr. Lesh himself asserted that sales increased by thirty

percent in the wake of these controversies. (Doc. 89 at 108, 183, 190.) Snowmobiling is not inherently "work activity," but generating marketing materials is plainly in that category.

### B.   Mr. Lesh's Other Arguments

Mr. Lesh raises a number of other arguments under the sufficiency-of-the-evidence rubric, although most are more properly considered on their own.

### 1.   The *New Yorker* article

Mr. Lesh contends the evidence was insufficient to convict him because Judge Gallagher improperly admitted into evidence and relied on statements made in the *New Yorker* magazine. The Government points out, however, that it is well established that a court reviewing the sufficiency of evidence must "consider all evidence admitted at trial, *even if admitted improperly*." *Davis v. Workman*, 695 F.3d 1060, 1078-79 (10th Cir. 2012) (emphasis added). Mr. Lesh says that "the judicial system does not work this way," but the cases say otherwise. (Doc. 137 at 6.) To win an appeal based on insufficiency of the evidence, an appellant has to show that the evidence admitted was insufficient, not that it was wrongly admitted. *See Davis*, 695 F.3d at 1078-1079; *Fernandez*, 24 F.4th at 1327. This does not, as Mr. Lesh asserts, mean that "evidentiary rulings in bench trials lie beyond the reach of any meaningful appellate review." (Doc. 137 at 6-7.) It simply means that arguments about improperly admitted evidence are reviewed under their own rules and doctrines, not as part of a sufficiency-of-the-evidence dispute. Indeed, Mr. Lesh makes just such an argument here, and it is given full, meaningful appellate review in Section III below.

### 2. Constitutional arguments

Also under the broad theme of his sufficiency-of-the-evidence challenge, Mr. Lesh raises three constitutional arguments that the Government calls "ancillary" and argues have not been preserved for appeal. (*See* Doc. 131 at 18.)

### a. Non-delegation

Mr. Lesh argues that the Government's interpretation of the underlying statute violates the non-delegation clause. The statute, 7 U.S.C. § 1011(f), authorizes the Secretary of Agriculture "[t]o make such rules and regulations as he deems necessary to prevent trespasses and otherwise regulate the use and occupancy of property" held by the Department of Agriculture. Mr. Lesh argues that construing Section 1011(f) to permit the Agriculture Department to prevent posting photos on social media—conduct that occurs after a defendant has left federal lands—violates the non-delegation doctrine, since such an interpretation would have no intelligible limitation on the Agriculture Department's authority. (Doc. 122 at 24-25.) His trial counsel preserved this argument for appeal by raising a similar version in a motion to dismiss. (Doc. 67 at 4) ("The language central to this legislative delegation—to 'regulate the use and occupancy of property'—is alarmingly vague and would appear to authorize nearly any criminal law the Department of Agriculture felt like issuing with respect to federal land.").) This argument mischaracterizes the offense for which Mr. Lesh was convicted, however, which was taking photos on National Forest lands, as opposed to posting them on social media after he had left. (Doc. 90 at 12); *see supra* Part II(a)(2).

### b.  First Amendment

Mr. Lesh argues that Judge Gallagher's interpretation of 36 C.F.R. § 261.14 "cannot be squared with Appellant's constitutional rights to free speech and expression and to due process." (Doc. 122 at 17.) He notes that the First Amendment protects his "right to doctor photos and post them to social media for artistic purposes, to stir up controversy, or for no reason at all," even if the photos "appear to depict a violation of a USFS regulation." (*Id.*) He contends that "[i]f this Court permits the prosecution (and persecution) of Appellant for posting what even the Government and its witnesses acknowledged was probably a photoshopped image, then artists, social media influencers, advertisers, and any number of people could find themselves facing criminal charges for publicizing provocative material." (*Id.* at 18.) The Government contends that this argument was waived, but Mr. Lesh's counsel did argue, in summation, that "[t]here are First Amendment concerns with" setting a "precedent whereby influencers in social media . . . simply do a post that doesn't even reference their business, that has nothing to do with their business, that still can trigger federal prosecution and a federal offense." (Doc. 89 at 237.)

Assuming this is sufficient to preserve the issue, it does not change the outcome. Judge Gallagher found that "Defendant's still photography at the Keystone resort was a commercial use or activity, [so] he was required to seek special-use authorization." (Doc. 90 at 12.) While Mr. Lesh is right that the First Amendment protects his ability to "depict a violation of a USFS regulation," his right to freedom of expression does not immunize him from criminal liability for the underlying conduct that he is depicting. (Doc. 122 at 17.) Even Mr. Lesh concedes that "a person may be convicted for unlawful conduct captured in a photograph only insofar as that photograph provides proof that the person

engaged in said conduct." (*Id.* at 18.) Mr. Lesh's photographs—some of which were doctored—provided proof that he had conducted commercial activity on National Forest lands.

### c.   Due process

Mr. Lesh argues that he received insufficient notice that a regulation prohibiting commercial activity on National Forest Service lands prohibited the operation of a snowmobile. (Doc. 122 at 27 ("Appellant could not have anticipated that a regulation prohibiting the *sale of merchandise* or *conducting work activity on federal* land would be used to prosecute him for posting a photograph on social media depicting an unidentifiable individual engaged in recreational snowmobiling.").) Mr. Lesh's trial counsel preserved this argument in his summation. (Doc. 89 at 238 ("[T]hat appears to prohibit me going to Keystone and setting up a stand and offering for sale some gloves, and saying, Hey, buy these gloves. That's what it appears to prohibit.").)

The Due Process Clause "bars courts from applying a novel construction of a criminal statute to conduct that neither the statute nor any prior judicial decision has fairly disclosed to be within its scope." *United States v. Muskett*, 970 F.3d 1233, 1243 (10th Cir. 2020). The question is not whether a criminal defendant has previously been convicted for identical behavior, but whether "the statute, either standing alone or as construed, made it reasonably clear at the relevant time that the defendant's conduct was criminal." *Id.* The relevant regulation, 36 C.F.R. § 261.10(c), prohibits "conducting any kind of work activity or service unless authorized by Federal law, regulation, or special-use authorization." It was reasonably clear from this regulation that taking photographs to promote a clothing line, which is unquestionably work activity,

- 12 -

would have been prohibited on National Forest lands without authorization.

### III. Judge Gallagher did not err by considering the *New Yorker* article.

Mr. Lesh argues that Judge Gallagher committed reversible error by admitting the *New Yorker* article about Mr. Lesh as evidence. (Doc. 122 at 28-32.) Mr. Lesh argues that (1) the article is inadmissible hearsay, *see* Fed. R. Evid. 802, and (2) the article contains inadmissible evidence of other past crimes, wrongs, or acts, *see* Fed. R. Evid. 404(b).

#### A.   Hearsay

Judge Gallagher concluded that "the Defendant's statements within the article and podcast were not inadmissible hearsay under Federal Rule of Evidence 801(d)(2)(B)." (Doc. 90 at 8-9.) That rule permits admission of a statement that "is offered against an opposing party and is one the party manifested that it adopted or believed to be true." Fed. R. Evid. 801(d)(2)(B). The statements by Mr. Lesh in the *New Yorker* article were unquestionably attributable to him and offered by his opponents. (Doc. 90 at 8-9.) Judge Gallagher found that Mr. Lesh had manifested that he believed the statements to be true by "verbally confirm[ing on a podcast] that nothing written by the [*New Yorker*] author was 'untrue or unfair'" and "not contend[ing] that the author had misquoted him or improperly insinuated that Defendant was the individual operating the snowmobile in the Keystone Resort." (*Id.* at 9.)

Mr. Lesh argues his podcast endorsement may not have been "carefully analyzed" and that some of the *New Yorker* statements that Judge Gallagher admitted into the record were made by the journalist, rather than Mr. Lesh. (Doc. 122 at 30-31.) Perhaps, but Rule 801(d)(2)(B)

allowed Judge Gallagher to admit statements in the *New Yorker* article that were by the journalist, in addition to those attributed to Mr. Lesh, since Mr. Lesh had adopted them by asserting that the article was accurate. Fed. R. Evid. 801(d)(2)(B); *see* (Doc. 90 at 9). Admission of evidence is reviewed "for abuse of discretion." *United States v. Hamilton*, 413 F.3d 1138, 1142 (10th Cir. 2005). "Because . . . hearsay determinations are particularly fact and case specific . . . review of those decisions is especially deferential." *Id.* Judge Gallagher did not abuse his discretion in admitting the *New Yorker* article based on Mr. Lesh's admission, even if that admission may not have been "carefully analyzed."

## B.   Other Crimes, Wrongs, or Acts

Federal Rule of Evidence 404(b) prevents courts from admitting evidence of a past acts "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Trial courts are entitled to "broad discretion" in Rule 404(b) determinations and will only be overruled if a decision "exceeded the bounds of permissible choice in the circumstances or was arbitrary, capricious, or whimsical." *United States v. Cushing*, 10 F.4th 1055, 1075 (10th Cir. 2021).

The *New Yorker* article meets the Tenth Circuit's four criteria for admission of evidence in accordance with Rule 404(b). *See United States v. Lazcano-Villalobos*, 175 F.3d 838, 846 (10th Cir. 1999). First, the article was admitted for a proper purpose that Judge Gallagher identified. (Doc. 89 at 87 ("The purpose of this argument is for statements of the defendant. The Court is fully competent of reviewing this article and looking at it only for the statement of the defendant and not as to his opinions on matters aside from this.").) It is apparent that Mr. Lesh's statements in the article were relevant to show intent, plan, and

knowledge (*see, e.g.*, Doc. 125-1 at 16 ("Here I am—or supposedly me—with one misdemeanor, in a terrain park."); *id.* at 17 ("It was an opportunity to reach a whole new group of people—while really solidifying the customer base we already had.")), and that Judge Gallagher did not use the article's mention of other past acts of Mr. Lesh to prove character, as prohibited by Rule 404(b). Second, the article was relevant to the case. Third, Judge Gallagher determined that the article's probative value was not substantially outweighed by its potential for unfair prejudice. (*See* Doc. 89 at 87-88.) Finally, while there was no jury to receive a limiting instruction, Judge Gallagher stated that he would not consider the portions of the article that discussed other past acts. (*Id.*) Judge Gallagher did not abuse his discretion under Rule 404(b) by admitting the article.

## IV. Judge Gallagher did not err by admitting evidence relating to Hanging Lake and Maroon Lake.

Mr. Lesh argues that Judge Gallagher's decision to admit (1) evidence that he had been charged with offenses related to his supposed trespass of Hanging Lake in June of 2020, and (2) a photograph depicting Mr. Lesh appearing to defecate in Maroon Lake violated Federal Rules of Evidence 403 and 404(b). (Doc. 122 at 32-36.) Judge Gallagher admitted the Hanging Lake and Maroon Lake evidence as *res gestae*, so the admission was not forbidden by Rule 404(b). (Doc. 89 at 7; *see United States v. Kravchuk*, 335 F.3d 1147, 1155 (10th Cir. 2003). Admission of this evidence was otherwise relevant and therefore entitled to deference.

## CONCLUSION

It is **ORDERED** that David Lesh's convictions are **AFFIRMED**.

DATED: March 10, 2023                    BY THE COURT:

———————————————————

~~Daniel~~ D. Domenico
United States District Judge

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF COLORADO

Gordon P. Gallagher, United States Magistrate Judge

Criminal Case No.  20-PO-07016-GPG

UNITED STATES OF AMERICA,

     Plaintiff,

v.

DAVID LESH,

     Defendant.

---

## MEMORANDUM OF DECISION AND ORDER

---

This matter was tried to the Court on August 5, 2021.  (D. 89).[1]  Defendant is charged by Superseding Information[2] with two counts:  (1) on or about April 24, 2020, operation of a snowmobile off a designated route upon lands administered by the United States Forest Service, in violation of 36 C.F.R. § 261.14; and (2) on or about April 24, 2020, through October 21, 2020, selling or offering for sale any merchandise or conducting any kind of work activity or service without authorization upon lands administered by the United States Forest Service, in violation of 36 C.F.R. § 261.10(c).  (D. 53).  I find Defendant GUILTY of Count 1 and Count 2.

---

[1]  "(D. 89)" is an example of the stylistic convention used to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF).  This convention is used throughout this Order.

[2] This Court has already detailed the facts and procedural history of this case in its prior Order and will not do so here.  (*See* D. 61).

The offenses charged are Class B misdemeanors, which are petty offenses.  18 U.S.C. § 19. As such, there is no right to a jury trial.  Fed. R. Crim. P. 58(b)(2)(F).  At the conclusion of the bench trial, this Court informed the parties that it would issue a Memorandum of Decision and Order containing specific findings of fact consistent with the provisions of Federal Rule of Criminal Procedure 23(c).  (D. 89, pp. 247-48); *see United States v. Unser*, 165 F.3d 755, 760 n.3 (10th Cir. 1999).

First, under 36 C.F.R. § 261.14:

After National Forest System roads, National Forest System trails, and areas on National Forest System lands have been designated for over-snow vehicle use pursuant to 36 CFR 212.81 on an administrative unit or a Ranger District of the National Forest System, and these designations have been identified on an over-snow vehicle use map, it is prohibited to possess or operate an over-snow vehicle on National Forest System lands in that administrative unit or Ranger District other than in accordance with those designations, provided that the following vehicles and uses are exempted from this prohibition:
    (a) Limited administrative use by the Forest Service;
    (b) Use of any fire, military, emergency, or law enforcement vehicle for emergency purposes;
    (c) Authorized use of any combat or combat support vehicle for national defense purposes;
    (d) Law enforcement response to violations of law, including pursuit;
    (e) Over-snow vehicle use that is specifically authorized under a written authorization issued under Federal law or regulations; and
    (f) Use of a road or trail that is authorized by a legally documented right-of-way held by a State, county, or other local public road authority.

Second, 36 C.F.R. § 261.10(c), prohibits "[s]elling or offering for sale any merchandise or conducting any kind of work activity or service unless authorized by Federal law, regulation, or special-use authorization."  This subsection of the regulation does not state that the person or entity must be on National Forest System lands.

I.    FACTS

I find the following facts to be true beyond a reasonable doubt:

(1) The Keystone Resort, in April 2020, was closed due to the COVID-19 pandemic, per decisions by Vail Resorts and a state-wide directive issued by Governor Polis.

(2) The Keystone Resort is on National Forest Service lands (NFS lands) within the White River National Forest in the state of Colorado.

(3) NFS lands are the property of the United States of America.

(4) In March 2020, employees, using plows attached to snowcat utility vehicles, created snow barriers in front of the terrain park features to make them inaccessible. Employees posted signs around the Keystone Resort indicating that the ski areas and terrain park were closed.  Employees conducted weekly patrols of the entire area to ensure buildings were secure and signage was visible and in place.

(5) On April 25, 2020, Christopher Ingham, the Director of Mountain Operations for Keystone Resort, was alerted to two photographs that were posted on Defendant's Instagram account that same day.

(6) Defendant owns a small outdoor apparel company called Virtika.

(7) Defendant's Instagram account bears the username "davidlesh," which maintains a blue verification badge issued by Instagram to accounts that are the authentic presence of public figures, celebrities, or global brands or entities it represents.[3]

(8) The first image, posted on April 25, 2020, in a series of two, depicts an individual wearing outdoor apparel consisting of dark-colored pants, a camouflage jacket, and a dark-colored ski cap, jumping a red and black snowmobile off a jump at the Keystone

---

[3] I take judicial notice of Instagram's definition for a verified badge on an Instagram account.  *See Verified Badges*, https://help.instagram.com/854227311295302 (last visited Oct. 21, 2021).

Resort in April of 2020.  A second individual, wearing a dark-colored ski bib and white shirt, stands on the ski jump and is in the process of taking a photograph or filming. The first photograph was taken either using a tripod stand or a third person.

(9) The second image, posted on April 25, 2020, is of the same individual on the red and black snowmobile but from a different perspective.

(10) The caption for the photographs posted on April 25, 2020, on Defendant's Instagram account states: "Solid park sesh, no lift ticket needed."  Before or on August 3, 2021, Defendant edited the caption to state: "Solid park sesh, no lift ticket needed. #FuckVailResorts."

(11) At approximately 9:00 a.m., on April 25, 2020, Ingham drove a snowcat (which has wider and larger tracks than a snowmobile with a 20-feet-by-30-feet overall footprint) to the terrain part at the Keystone Resort and found snowmobile tracks looping around a ski jump.  Ingham observed and photographed these tracks.  Ingham noted that employees were not using snowmobiles during the closure of the resort in April 2020, the vehicle maintenance shop that housed the access keys for those vehicles was locked at this time, and employees exclusively relied upon snowcat utility vehicles and other tractor-type utility vehicles to patrol and maintain the grounds of the Keystone Resort.

(12) Ingham also observed that a utility shed about a hundred yards above the ski jump had been entered and a snow shovel had been removed.  The snow shovel was used to clear a channel in the snow berm that had been created to block access to the ski jump.  The channel was approximately five feet wide, which was enough for a snowmobile to ride through.

(13) Ingham noted that the tracks indicated that more than one jump had taken place and that, in addition to using the ski jump, the tracks indicated that snowmobiling had occurred around the resort, terrain park, through an area called Erickson Bowl, and down a trail on the NFS lands.

(14) On June 10, 2020, and October 21, 2020, two more images depicting Defendant standing in protected bodies of water on NFS lands, namely Hanging Lake and Maroon Lake, were posted to the davidlesh Instagram profile.  The Government does not argue that these photographs are authentic.

(15) On January 11, 2021, an article entitled "Trolling the Great Outdoors" by Nick Paumgarten was published in The New Yorker, a national weekly publication.

(16) The author of the article states:

    a. "Lesh decided to poke the bear. He posted a couple of photos of him snowmobiling off a jump in a closed terrain park at the Keystone ski area, which, like Breckenridge, is operated by the company that owns Vail ski resort, on land belonging to the Forest Service."

    b. "Lesh declined to reveal Virtika's annual sales, though he claimed they were up thirty per cent since he'd posted the photo at Hanging Lake; he said he owns the company outright and carries very little debt."

(17) Defendant is quoted in the article saying:

    a. "But, me being a little guy, it's not interesting or unique. You're not getting noticed being super 'eco this' and 'eco that.' It's also just not my thing."

    b. "Here I am—or supposedly me—with one misdemeanor, in a terrain park, and everyone goes nuts. It's absolutely ridiculous."

c.  "The more hate I got, the more people got behind me, from all over the world,"
Lesh said. "These people couldn't give two fucks about me walking on a log in
Hanging Lake. It was an opportunity to reach a whole new group of people—
while really solidifying the customer base we already had."

d.  Regarding the images of Hanging Lake and Maroon Lake: "I wanted them to
charge me with something. The only evidence they have is the photos I posted
on Instagram, which I know are fake, because I faked them. I was pissed off
about them charging me for the snowmobiling on Independence Pass with zero
evidence. I realized they are quick to respond to public outcry. I wanted to bait
them into charging me."

e.  "I want to be able to post fake things to the Internet. That's my fucking right as
an American."

(18)  Defendant does not state that the Keystone Resort images posted on April 25, 2020,
are photoshopped.

(19)  Defendant later appeared on the Vance Crowe Podcast.  When asked about The
New Yorker article, Defendant responded that "nothing that he [the author of the
article] said was untrue or unfair, but it only captures one aspect of me, one part of my
life, one part of our marketing, one part of my company."


II.    ANALYSIS

There are two disputes in this case, whether:  (1) Defendant is the person riding the
snowmobile at the Keystone Resort in April 2020, and (2) Defendant's post regarding the Keystone

6

Resort constitutes the selling or offering for sale any merchandise or conducting unauthorized work activity or service on NFS lands.[4]

The Government does not argue that the Hanging Lake and Maroon Lake photographs are authentic, thus I will not consider the photographs as separate violations of the second count because the Government does not argue that Defendant was on NFS lands when these photographs were created or taken. Rather, the Government argued that the Hanging Lake and Maroon Lake photographs were offered to show that Defendant continued to promote his business with controversial photographs depicting NFS lands and were relevant as *res gestae*. At most, the Hanging Lake and Maroon Lake photographs can be considered evidence of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. *See* Fed. R. Evid. 404(b)(2); *see United States v. Sangiovanni*, 660 F. App'x 651, 655 (10th Cir. 2016) (finding that the district court did not abuse its discretion in admitting two photographs of the defendant that he emailed to the victim, which depicted him holding a firearm). Furthermore, Rule 404(b) applies "only to prior bad acts extrinsic to the crime charged." *United States v. Kravchuk*, 335 F.3d 1147, 1155 (10th Cir. 2003).

This Court is persuaded in particular by Government exhibits numbers 4 through 7. These exhibits consist of photographs showing snowmobile track marks in the snow from a person snowmobiling off of a ski jump at the Keystone Resort and that were taken on the morning of April 25, 2020. Of particular importance, the Government provided testimony that resort

---

[4] Generally, courts have found that a violation of Forest Service regulations to be a public welfare offense and lacks a *mens rea* requirement. *See United States v. Unser*, 165 F.3d 755, 763-74 (10th Cir. 1999) (finding that violations of 16 U.S.C. § 551 and 36 C.F.R. § 261.16(a) do not have a required *mens rea* element). Accordingly, for such offenses, courts impose strict liability without a scienter requirement. *Id.*; *see also United States v. Good*, 257 F. Supp. 2d 1306, 1318 (D. Colo. 2003) (finding violations of 36 C.F.R. §§ 261.9(a) and 261.10(a) are public welfare offenses); *United States v. Ellison*, 112 F. Supp. 2d 1234, 1235, 1237 (D. Colo. 2000) (finding the defendant's violation of 36 C.F.R. § 261.10 to be a strict liability offense). The Court, as discussed *infra*, does not need to reach a conclusion regarding the violations in this case and strict liability because the evidence supports an inference that Defendant knew he was on NFS lands. *See United States v. Brown*, 200 F.3d 710, 715 (10th Cir. 1999).

employees were neither using nor had access to snowmobiles during the time that the resort was closed due to the COVID-19 pandemic. Rather, the employees were using large snowcats and tractor utility vehicles to patrol the resort and construct the berms blocking access to the ski jumps. Furthermore, employees were patrolling the Keystone Resort on a weekly basis. Thus, on or about April 24, 2020, one or more persons had to bring a snowmobile into the terrain park, clear the artificially made snow mounds blocking the ski jump using the snow shovel in the utility shed, and then joy ride around the resort and jump off the ski jumps. The discovery and existence of track marks in the terrain park on April 25, 2020, which was the same day that Defendant posted the photographs on his social media account, indicates that the photographs are authentic. Indeed, Defendant never argued that the Keystone Resort photographs were photoshopped.

This Court is also persuaded by Government exhibits numbers 9 and 13. Exhibit 9 is the article published in The New Yorker magazine. In the article, the author places Defendant on the snowmobile, writing "[h]e posted a couple of photos of him snowmobiling off a jump in a closed terrain park at the Keystone ski area." Nevertheless, this statement by the author alone does not prove identity. Defendant is directly quoted in the article stating, "[h]ere I am—or supposedly me—with one misdemeanor, in a terrain park, and everyone goes nuts. It's absolutely ridiculous." Exhibit 13 consists of a short segment of a podcast interview. At the start of the podcast, Defendant confirmed that "nothing that he [the author of the article] said was untrue or unfair, but it only captures one aspect of me, one part of my life, one part of our marketing, one part of my company." Defendant noted that the article could not be a "fluff piece" and therefore other aspects of his life and company were not included. The question is whether Defendant manifested an adoption or belief in the truth of the statements in The New Yorker article. This Court finds that he did. During the bench trial, the Court determined that Defendant's statements within the article and podcast

were not inadmissible hearsay under Federal Rule of Evidence 801(d)(2)(B). *See United States v.*

*Harrison*, 296 F.3d 994, 1001 (10th Cir. 2002). Furthermore, the Tenth Circuit has noted:

> In view of our decision to reverse the district court's determination with respect to the fraud issue, we must examine plaintiff's claim that the district court improperly refused to admit into evidence certain reprints of newspaper articles that were delivered by defendants to plaintiff's decedent. The reprints make statements about defendants' financial situation that are claimed to be inflated representations relevant to the fraud inquiry. In the first trial the district court ruled that these newspaper reprints were inadmissible as hearsay. This decision was incorrect. Fed.R.Evid. 801(d)(2) provides that a statement is not hearsay if it is offered against a party and is "a statement of which he has manifested his adoption or belief in its truth." By reprinting the newspaper articles and distributing them to persons with whom defendants were doing business, defendants unequivocally manifested their adoption of the inflated statements made in the newspaper articles.

*Wagstaff v. Protective Apparel Corp. of Am.*, 760 F.2d 1074, 1078 (10th Cir. 1985). Here,

Defendant went beyond merely reprinting an article and distributing it, rather he appeared on a

podcast and verbally confirmed that nothing written by the author was "untrue or unfair."

Defendant did not contend that the author had misquoted him or improperly insinuated that

Defendant was the individual operating the snowmobile in the Keystone Resort.

With the combination of circumstantial evidence plus Defendant's adoption or belief in the

truth of the article's statements, this Court finds beyond a reasonable doubt that Defendant

possessed or operated an over-snow vehicle on NFS lands on or about April 24, 2020, that such

operation or possession of an over-snow vehicle was outside of the roads, trails, and areas

designated for over-snow vehicle use because the Keystone Resort was closed due to the COVID-

19 pandemic and the terrain park was not a designated route[5], and that defendant's conduct did not

fall within any of the regulatory exemptions under 36 C.F.R. § 261.14(a)-(f).

---

[5] Defendant argued that under 36 C.F.R. § 261.14, the Government failed to prove an element of its case, namely that the NFS lands needed to be identified on an over-snow vehicle use map and that the Government did not provide evidence of such required designations by furnishing a map as an exhibit. The Court denied Defendant's motion for judgment of acquittal under Rule 29, finding that the Keystone Resort is not an area of NFS lands that has been designated for over-snow vehicle use and therefore a map did not need to be furnished, the resort and terrain park were closed due to the COVID-19 pandemic, signage of the closure was placed throughout the resort and terrain park, and employees of the resort had created snow berms to prevent

There is no dispute that Defendant then posted the June 10, 2020, photo of Hanging Lake and October 21, 2020, photo of Maroon Lake.  Defendant conceded this.  Defendant stated in The New Yorker article, "I wanted them to charge me with something. The only evidence they have is the photos I posted on Instagram, which I know are fake, because I faked them. I was pissed off about them charging me for the snowmobiling on Independence Pass with zero evidence."  While the Government did not argue that the Hanging Lake and Maroon Lake photographs were authentic, it did argue that they show that Defendant continued to promote his business with photographs that depicted NSF lands.

Under 36 C.F.R. § 261.10(c), a person is prohibited from "[s]elling or offering for sale any merchandise or conducting any kind of work activity or service unless authorized by Federal law, regulation, or special-use authorization."  To be found guilty of violating § 261.10(c), the Government must prove:  (1) that the defendant was "conducting any kind of work activity or service"; (2) that was "on lands encompassed by the regulation"; and (3) that was "without a special use authorization."  *United States v. Parker*, 761 F.3d 986, 993 (9th Cir. 2014).  Defendant challenged only the first two elements.

Regarding the first element, the Tenth Circuit has noted that "[r]eceipt of payment, however, is not a required element under § 261.10(c).  The key is whether the sale or offer of sale of merchandise or the work activity or service is a commercial activity."  *United States v. Brown*, 200 F.3d 710, 714 (10th Cir. 1999) (listing cases).  Noncommercial or gratuitous activities (i.e., uncompensated aid to a friend) are not the target of § 261.10(c).  *United States v. Bartels*, No.

---

trespassers from using the terrain park during the closure.  Therefore, it was abundantly clear to a reasonable person that these NFS lands were not designated for over-snow vehicle use.  Regardless, because the winter motor vehicle use map is publicly available at https://www.fs.usda.gov/Internet/FSE_DOCUMENTS/fseprd491314.pdf, I take judicial notice of it, which notice may be taken at any time including on appeal.  *United States v. Burch*, 169 F.3d 666, 671-72 (10th Cir. 1999) ("[O]fficial government maps are generally an acceptable source for taking judicial notice."); *see Klamath-Siskiyou Wildlands Ctr. v. Gerritsma*, 638 F. App'x 648, 655 n.4 (9th Cir. 2016).  Accordingly, Defendant's argument is unavailing.

F053881, 1998 WL 289231, at *4 (D. Colo. May 28, 1998) (citing *United States v. Strong*, 79 F.3d

925, 929 (9th Cir. 1996)).  Indeed, in *Bartels*, the Court noted that:

> Some evidence must be presented to show that the activity or service was
> commercial in nature—i.e., for money or other consideration. Otherwise,
> § 261.10(c) would prohibit a friend, relative or neighbor from picking up horses for
> a third party. There is no question that § 261.10(c) is not directed at friends or
> relatives. It is directed at the [party] who is profiting [directly] or indirectly from
> the service or activity.

*Id.*

The advertisement and marketing campaign with which Defendant embarked, beginning

with the Keystone Resort photographs, was one that relied upon social media trolling as a way to

stir up controversy and free press while using NFS lands as the location or backdrop because as a

small business, he was "not getting noticed being super 'eco this' and 'eco that.'"  In the ever-

growing lexicon of internet lingo, a troll is defined as "an online user who purposefully posts

provocative, offensive, or insulting speech in order to draw a reaction from others."  Fernando L.

Diaz, *Trolling & the First Amendment: Protecting Internet Speech in the Era of Cyberbullies &

Internet Defamation*, 2016 U. Ill. J.L. Tech. & Pol'y 135, 137 (2016).  While the Government did

not challenge the authenticity of the Hanging Lake and Maroon Lake posts, these posts are relevant

under Federal Rule of Evidence 404(b)(2) for proving motive, opportunity, and intent.

Defendant assisted the Government in proving his motive, opportunity, and intent when he

stated in The New Yorker article "[t]he more hate I got, the more people got behind me, from all

over the world . . . It was an opportunity to reach a whole new group of people—while really

solidifying the customer base we already had."  And Defendant confirmed as true and accurate the

statement in the article that noted that "Lesh declined to reveal Virtika's annual sales, though he

claimed they were up thirty per cent since he'd posted the photo at Hanging Lake; he said he owns

the company outright and carries very little debt."  Thus, the Court finds that Defendant's activity

11

while trespassing at the Keystone Resort was commercial in nature and that the activity was on lands encompassed by the regulation and without a special use authorization.

Regardless, even without considering these admissions by Defendant, the Court could still find that Defendant's actions were commercial in nature. Commercial use or activity is defined as "any use or activity on National Forest System lands (a) where an entry or participation fee is charged, or (b) where the primary purpose is the sale of a good or service, and in either case, *regardless of whether the use or activity is intended to produce a profit*." 36 C.F.R. § 261.2 (emphasis added). And still photography is defined as the "use of still photographic equipment on National Forest System lands that takes place at a location where members of the public generally are not allowed or where additional administrative costs are likely, or uses models, sets, or props that are not a part of the site's natural or cultural resources or administrative facilities." 36 C.F.R. § 251.51. Indeed, filming and photography on NFS lands have been found to be commercial activities falling within the scope of 36 C.F.R. § 261.10(c). *See United States v. Patzer*, 15 F.3d 934, 938 (10th Cir. 1993) (affirming a conviction under §§ 251.50 and 261.10(c) for engaging in commercial service, outfitting, and filming motion pictures on NFS lands without special use authorization); *United States v. Lewton*, 575 Fed. Appx. 751, 753 (9th Cir. 2014) (affirming a conviction under 36 C.F.R. §261.10(c) for engaging in the commercial activity of filming bighorn sheep for profit without special use authorization). Because Defendant's still photography at the Keystone Resort was a commercial use or activity, he was required to seek special-use authorization, such as a "written permit, term permit, lease, or easement that authorizes use or occupancy of National Forest System lands and specifies the terms and conditions under which the use or occupancy may occur." 36 C.F.R. §§ 251.51, 261.2. Having failed to do that, and then posting the photographs on Instagram, this Court finds that Defendant was engaged in a work

activity or service in violation of § 261.10(c). Either way, this Court finds beyond a reasonable doubt that on or about April 24, 2020, through October 21, 2020, Defendant sold or offered for sale any merchandise or conducted any kind of work activity or service without authorization by Federal law, regulation, or special-use authorization in the Keystone Ski Area within the White River National Forest. And, ultimately, this Court does not need to decide if the regulations contain a *mens rea* requirement as the "evidence supports an inference [Defendant] knew he was on Forest Service land" while at the Keystone Resort. *United States v. Brown*, 200 F.3d 710, 715 (10th Cir. 1999).

III.     CONCLUSION

Accordingly, I find beyond a reasonable doubt that on or about April 24, 2020, Defendant possessed or operated an over-snow vehicle in the Keystone Ski Area, outside of the roads, trails, and areas designated for over-snow vehicle use on the winter motor vehicle use map for the Dillon Ranger District of the White River National Forest and that Defendant's conduct did not fall within any of the regulatory exemptions (count 1). Consequently, I find Defendant GUILTY of violating 36 C.F.R. § 261.14.

Furthermore, I find beyond a reasonable doubt that Defendant on or about April 24, 2020, through October 21, 2020, sold or offered for sale any merchandise or conducted any kind of work activity or service in the Keystone Ski Area within the White River National Forest without authorization by Federal law, regulation, or special-use authorization (count 2). Consequently, I find Defendant GUILTY of violating 36 C.F.R. § 261.10(c).

IT IS FURTHER ORDERED THAT:

(1)  On or before **November 15, 2021**, the Government shall file any request for restitution, if any is sought.  This request shall state, with specificity, the amount sought and what this amount would pay for.  Defendant shall respond to the Government's restitution request within **fourteen days (14)** thereafter.  Defendant shall state, with specificity, any amounts agreed to and any amounts in disagreement.  Within **ten days (10)**, the Government shall reply to Defendant's response.  If either party believes that a contested hearing is needed on the issue of restitution, they shall so state in their written filing (the Government may so state in their reply after finding out if the Defendant disputes any amount) and include for the Court an estimated time for the length of such hearing.

(2)  The Court will later set a sentencing date after the parties have determined whether restitution is at issue.

(3)  A final judgment will not enter until the date of sentencing, with the time for appeal commencing on that date.


Dated at Grand Junction, Colorado this October 22, 2021.

_____
Gordon P. Gallagher
United States Magistrate Judge

1    headquarters of corresponding administrative units and

2    ranger districts of the National Forest System.

3           That's simply -- there's no evidence been -- and

4    Count 1 has to fail on those grounds, that -- and that is

5    our request.

6           THE COURT:  All right.  We'll take about a

7    15-minute break for our afternoon break.  I want to take

8    another look at the statute, and we will be back together

9    here at about 10 minutes after 3:00.  Thank you.

10          MR. FADDIS:  Thank you, Your Honor.

11          (Recess was taken.)

12          THE COURT:  All right, we are back on the record

13   in the United States vs. David Lesh after a motion pursuant

14   to Rule 29.  Anything further from the parties before I make

15   my ruling?

16          MR. FADDIS:  None from defense, thank you.

17          THE COURT:  All right.  So in looking at Rule 29

18   specifically, the motion for judgment acquittal after the

19   close of the Government's case, the Court has to determine

20   whether evidence is insufficient to sustain a conviction.

21   Of course it was appropriately cited by the parties.  I have

22   to take all evidence in the light most favorable to the

23   prosecution at this stage.

24          In terms of Count 1, which is premised on a

25   violation of the statute 261.14 for over-snow vehicle use,

1    the specific issue -- well, a number of specific issues were

2    cited by the defense, but in particular one was with regard

3    to essentially the premise that, at least at this stage of

4    the proceedings, the Court has to be provided, essentially,

5    with a map showing prohibition for over-snow vehicle use on

6    National Forest System lands.

7            At this stage of the proceedings, the Court does

8    not find that that is the sole method of meeting that prong

9    of the analysis.  Here there was unrebutted testimony that

10   -- there was some challenges on hearsay issues, but

11   unrebutted as to the substance of the -- of it, at least at

12   this juncture, which, of course, is not shifting the burden,

13   but just discussing the testimony, that this occurred in the

14   State and District of Colorado on or about the date charged

15   in this matter, April the 24th of 2020, on National Forest

16   System lands, and that specifically the area in question was

17   signed -- I believe the testimony was that there was

18   essentially signage every hundred or so feet, and that it

19   was signed specifically that it was closed on this occasion,

20   and closed to snowmobiles.

21           At this point in time, based off of the testimony

22   that was provided -- and well, there was further testimony

23   that any snowmobile or snow machine usage in there was

24   limited to, essentially, other authorization, such as

25   emergency authorizations, for example:  Ski patrol, or some

1  kind of utility, or maintenance work, such as use of

2  snowcats or other snow machines for purposes of maintaining

3  the ski resort, but otherwise was closed.  That satisfies

4  that prong of the analysis with regard to Count 1 for

5  purposes of proceeding under Rule 29 at this point in time.

6          In addition -- also, of course, challenged in this

7  case more vehemently -- or I should say vehemently, as we're

8  going along, is the identity of the defendant, David Lesh.

9  Of course, the Court can proceed both on direct evidence and

10 indirect evidence, and here there's a combination of both

11 that's been presented.

12          In the light most favorable to the prosecution,

13 that evidence in combination, which is -- particularly to

14 point it out, but not necessarily to focus on all of it, is

15 various Instagram postings purportedly by Mr. Lesh with

16 statements such as, Such solid park sesh, no lift ticket

17 needed posted of what is clearly an unknown individual on a

18 snow machine going over a jump that's been identified as a

19 jump in the terrain park, but then later identification by

20 Mr. Lesh of that being himself through the more attenuated

21 circumstance of an article written about it that has been

22 admitted, and then a ratification by Mr. Lesh that the

23 information in that article was not incorrect with regard to

24 that specific statement in the article as it applies to that

25 portion of the evidence is:  He posted a couple of photos of

1    him snowmobiling off a jump in a closed terrain park at

2    Keystone Area, which, like Breckenridge, is operated by a

3    company that owns Vail Resort on lands belonging to Forest

4    Service.

5         So the combination of the pictures, the article,

6    and the video are sufficient to support the evidence

7    pursuant to Rule 29 at this juncture.  So I find that there

8    is sufficient evidence to proceed forward with regard to

9    Count 1.

10        Moving on to Count 2, I find that there is a need

11   for something, essentially, untoward, for lack of -- at

12   least this point, a more specific term that I'll define here

13   in a moment -- to happen under these circumstances for Count

14   2 to be proven.  I'll refer to a couple of cases.  One of

15   those is United States vs. Bartells, 1998 WestLaw 289231 at

16   star 4, which is a case out of the District of Colorado that

17   discusses filming and photography on National Forest System

18   lands can be found to be commercial activities falling

19   within the scope of 3 -- 36 CFR 261.10(c).

20        I also refer to the United States vs. Lewton,

21   L-E-W-T-O-N, 575 Federal.Appx.751 out of the Ninth Circuit,

22   which confirmed a conviction when an individual essentially

23   went into a closed area to film big horn sheep for profit

24   without a special use permit.

25        Here, based off of the evidence at this point and

1  looking at it in the light most favorable to the People, we

2  have evidence that supports Count 1, that supports Mr. Lesh

3  taking these pictures.  And then with regard to Count 2, we

4  have evidence of, essentially, a business model where an

5  individual posts various pictures of themselves and other

6  individuals doing things and essentially markets the company

7  across different media for those purposes, and then of

8  course, we finally have Mr. Lesh's statement referring back

9  to his postings, which indicate an increase in his profits

10  that occurred after posting the Hanging Lake photo, at least

11  by implication, which is sufficient for purposes of this

12  point, and by essentially indirect evidence, it's sufficient

13  to support the idea that Mr. Lesh uses various social media

14  in his activities to support and increase the sales of

15  Virtika as he discussed in the article that he later

16  ratified.

17          So for all of those reasons, I find that there is

18  competent evidence to proceed as to both Counts 1 and Count

19  2, and the motion under Rule 29 for judgment of acquittal is

20  denied.

21          Okay.  Anything, Mr. Faddis, before I advise your

22  client in terms of his right to testify or to remain silent?

23          MR. FADDIS:  Your Honor, may I just clarify a few

24  things from the Court's ruling on the Rule 29 motion for

25  purposes of the record?